### NORFOLK SOUTHERN RAILROAD CO. v. S. J. SMITHERMAN.

(Filed 3 December, 1919.)

**1. Principal and Agent—Scope of Authority of Agent—Secret Limitations—Evidence—Declarations.**

Secret limitations upon the authority of an agent to bind his principal contrary to the usual or apparent authority conferred upon agencies of like character, are not binding upon those dealing with such agent when unknown to them, and they are under no obligation to inquire into the agent's actual authority; and where they have dealt with the agent, relying upon his apparent authority in good faith, in the exercise of reasonable prudence, the principal will be bound by the agent's acts in the usual and customary mode of doing such business, though the agent may have acted in violation of his private instructions; but where the agent has acted beyond his apparent authority, his declarations of his authority to act may not be received as evidence against the principal, and the principal will not be bound thereby unless he has in some way ratified such act.

**2. Principal and Agent—Scope of Authority—Agent's Declarations—Past Transactions—Evidence—Railroads—Station Agents.**

The local freight and passenger agent of a railroad company has no implied authority by virtue of such agency to surrender the possession of a part of its local depot or yards to the owner of the fee under his claim that the property had reverted, under his deed, to himself, by reason of its nonuser for general railroad purposes; and the declaration of the agent on a trial involving this question, that the railroad company, for which he was agent, had ceased to so use it are incompetent, and its admission is reversible error.

CIVIL ACTION, tried before *Harding, J.,* and a jury, at April Term, 1917, of MONTGOMERY.

The plaintiffs alleged that defendants had trespassed upon certain land described in the complaint, and asks for damages. The defendants, T. J. Smitherman and wife, conveyed to the Durham and Charlotte Railway Company the land which is situated in the town of Troy, with the following *habendum* in the deed: "To have and to hold the aforesaid tract of land, with the appurtenances and every part thereof, unto the said party of the second part, its successors and assigns, to their proper use and behoof forever; to be used by the said party of the second part, its successors and assigns, for the purpose of erecting and maintaining thereon passenger and freight railroad station, and the proper appendages thereto, and to transact on said granted premises the usual operations and business of a common carrier of freight and passengers, and for no other purpose or purposes whatsoever." The deed also contained the following clause: "In the event the said parties of the second part, its successors and assigns, shall discontinue the use of the aforesaid granted station site for the purposes hereinbefore named, then, in that event, the aforesaid granted station site, with all the appurtenances thereto belonging, shall revert to the said parties of the first part, their executors, administrators, and assigns." The plaintiff, Norfolk Southern Railroad Company, has acquired all the rights which the Durham and Charlotte Railway Company had under said deed, subject to the restrictions of the *habendum* and clause of forfeiture above set forth.

The plaintiff claims the land and the structures thereon, consisting of station house, tracks, etc., which were placed there by the Durham and Charlotte Railway Company, and the defendants allege that the property, and all rights therein, have been forfeited by violation of the terms of the deed, whereby the same reverted to the defendants.

The jury returned the following verdict:

"1. Is the plaintiff, the Norfolk Southern Railway Company, the owner of the land described in the complaint, as alleged? Answer: 'No.'

"2. Did the defendant, prior to the commencement of this action, unlawfully enter upon the lands described in the complaint and commit a trespass thereon, as alleged? Answer: 'No.'

"3. What damage, if any, is the plaintiff entitled to recover of the defendants for such unlawful entry and trespass, as alleged? Answer: 'Nothing.'

"4. Did the plaintiff unlawfully cause to be issued a restraining order out of this court restraining the defendants from entering upon the lands described in the complaint, as alleged in the answer? Answer: 'Yes.'

"5. What damage, if any, are the defendants entitled to recover of the plaintiffs for unlawfully causing such restraining order to be used as alleged? Answer: '$500.'"

Evidence was taken upon this issue, and, upon the examination of the defendants' witness, W. I. Myrick, he was permitted to testify to a statement of S. T. Brown, plaintiff's local agent at Troy, to the effect that the property no longer belonged to the railway company, and it would have nothing more to do with it, as it then was the property of Mr. Smitherman. Brown delivered the key of the old building to the witness at that time. Plaintiff's objection to this testimony was overruled.

There was evidence that the plaintiff had erected a new building on the premises, where it had its ticket office and received some freight, but that it still used the old building and its appurtenances for the heavier freight and received such freight and shipped it from that building. It had received freight at the old building from defendant Smitherman, goods which were manufactured in its cotton mill nearby, and shipped the same on cars which were loaded at the old building, and there was other evidence of the continued use of the old building for the purpose of storing and handling heavy freight, or "overflow freight," until this action was commenced on 23 August, 1912.

The court instructed the jury, under the issues submitted, to inquire and find whether the plaintiff had violated the stipulations of the deed and the clause of forfeiture, and gave these instructions, among others: "The burden is upon the defendant to satisfy you by the greater weight of the evidence that the plaintiff has ceased to use it for all purposes which they had a right to use it for under this deed; that is, ceased to use it for a passenger station and for a freight station; ceased to use appendages, the cartway, the car tracks, and any other appendages which you may find they had in connection therewith; ceased to use that property in any transaction usually conducted by a common carrier of freight and passengers, connected with it as a station. If the defendant has satisfied you that they have ceased all these functions, it would be your duty to answer the issue 'No'; that the plaintiff is not the owner of it. . . . If they have failed to so satisfy you, you will answer it 'Yes,' because the defendant in this case admits that the railroad is the owner of the property unless they have ceased to use it, as I have explained to you. . . . The plaintiff contends that up to 23 August, 1912, the date this action was commenced, it was in the actual use of that property as a railway station; that it was using the building itself and the appendages thereto as a freight station; that it was engaged in the transaction of business usually conducted by common carriers of passengers and freight in connection with that property as a freight station. The plaintiff contends that if you should find that it had removed its passenger station, and that if, before this time, it was selling tickets from the other office and receiving passengers there for trains going out and coming in, that even though you should find that its passenger service

was conducted from the other station, it had not abandoned this property, and that it had done nothing to affect its rights. The court charges you that even though the railroad conducted a separate passenger service, if they continued to use this place as a freight station, then you will answer the issue 'Yes,' because so long as the railroad company continued to use it, either as a freight station or a passenger station, or continued to use the appendages there for the purpose of using that property as a freight station, then the property belongs to the railroad."

Judgment was entered upon the verdict. Plaintiff appealed.

*Charles A. Armstrong and Tillett & Guthrie for plaintiff.*
*R. T. Poole and H. M. Robins for defendant.*

WALKER, J., after stating the case as above: . The question which the witness, W. I. Myrick, was allowed to answer was incompetent, and should have been excluded. Its admission was clearly prejudicial, and, considering the other testimony in the case, it doubtless controlled the jury in rendering the verdict for the defendant. The witness, S. T. Brown, mentioned in the question and answer, had no authority, express or implied, to surrender possession of the old building to the defendant, or to any one under their direction, nor was any declaration made by him to Myrick, as to what the plaintiff had done about that building, and to the effect that it had been surrendered to the defendants and belonged to them, admissible against the plaintiffs, who were his principal. He had no real or apparent authority to give up his principal's property, so far as this record shows, and certainly none to declare what the principal had done in the past respecting it. His duty was nothing more than that of a local passenger and freight agent, and nothing is disclosed to show, nor has it been submitted to the jury and found, that it was more than this. *Bank v. Hay,* 143 N. C., 326; *Brittain v. Westall,* 135 N. C., 492; *Metal Co. v. R. R.,* 145 N. C., 293. The plaintiff, as principal, has not ratified what the agent is alleged to have done, nor acquiesced therein, but on the contrary, has denied that the agent had any such authority. "Limitations which are known to a person dealing with an agent are as binding upon such person as they are upon the agent, and he can acquire no rights against the principal by dealing with the agent contrary thereto." 31 Cyc., 1329. While as between the principal and the agent the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof, and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is

that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person, who, in order to avail himself of rights thereunder, must have dealt with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence, in which case the principal will be bound by acts of the agent performed in the usual and customary mode of doing such business, although he may have acted in violation of private instructions, for such acts are within the apparent scope of his authority. An agent cannot, however, enlarge the actual authority by his own acts without some measure of assent or acquiescence on the part of his principal, whose rights and liabilities as to third persons are not affected by any apparent authority which his agent has conferred upon himself simply by his own representations, express or implied. Although these rules are firmly established, their application to particular cases is extremely difficult. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had under the circumstances conferred upon his agent. 31 Cyc., 1331-1335.

There is evidence that the defendant had freight in the old building for shipment at the time this action was commenced, and that it was used for the storage of heavy and overflow freight in connection with the new building, which was on the railroad premises not far away. But, however, the fact may be as to the authority of the agent to surrender the property, his declaration to Myrick, if made, was incompetent to prove it. We have seen that he cannot enlarge his authority by his own declarations, and this Court has recently stated that "the authorities in this State are all to the effect that declarations of an agent made after the event, and as mere narrative of a past occurrence, are not competent against the principal." *Johnson v. Ins. Co.,* 172 N. C., 142, citing *Smith v. R. R.,* 68 N. C., 115; *Rumbough v. Improvement Co.,* 112 N. C., 751; *Morgan v. Benefit Society,* 167 N. C., 265.

The error in admitting this evidence, without other proof extending the authority of the agent beyond its implied or apparent limitation, entitles the plaintiffs to another trial, and it will be so certified.

New trial.