ALFRED A. McGARITY AND WILLIAM A. McGARITY v. CRAIGHILL, RENDLEMAN, INGLE & BLYTHE, P.A., JAMES B. CRAIGHILL, JOHN T. RENDLEMAN, JOHN R. INGLE AND ROBERT B. BLYTHE

No. 8626SC394

(Filed 21 October 1986)

1. **Principal and Agent § 5.2— law firm—member soliciting investments—no agent of firm**

In an action to recover $45,000 as damages for two acts of conversion by a former member of defendant law firm on the ground that the member was an agent of the firm and was acting within the apparent scope of his authority when he solicited and accepted loans from plaintiffs, evidence was insufficient to be submitted to the jury where it tended to show that the firm was not in the business of soliciting or accepting money for investment purposes and there was no evidence that it had ever done so; the firm was not authorized to do so by its articles of incorporation; there was no evidence that the former member's acts could have benefited the firm in any way; there was no evidence that any other member of the firm knew or should have known about the former member's soliciting and accepting the money; and the firm thus could not have committed any acts to hold the former member out as having the authority to do so.

2. **Attorneys at Law § 1— conversion by former member of firm—no duty of firm to supervise—no recovery against firm**

Plaintiffs could not recover in their action to recover $45,000 as damages for two acts of conversion by a former member of plaintiff law firm on the ground that defendants were negligent in failing to supervise the former member adequately and their negligence proximately caused harm to plaintiffs, since plaintiffs failed to show that defendants had a duty to detect and supervise the former member's activities which were outside the practice of law, which he had no authority to take, and of which defendants had no reason to know.

3. **Trover and Conversion § 2— unaware of allegedly wrongful acts by former associate—no recovery for conversion**

In an action to recover for two acts of conversion based on an alleged violation of N.C.G.S. § 78A-56(a) and (c), portions of the N. C. Securities Act

providing for civil liability and criminal penalties for the offering and selling of securities by means of an untrue or misleading statement, plaintiffs were not entitled to recover where there was no evidence whatsoever that defendants knew or acted in reckless disregard of the existence of the facts by reason of which the liability was alleged to exist.

APPEAL by plaintiffs from *Grist, Judge.* Judgment entered 13 December 1985, in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 24 September 1986.

This is a civil action wherein plaintiffs seek to recover from defendants, an incorporated law firm or "professional association" and its individual members, $45,000.00 as damages for two acts of conversion by Francis O. Clarkson, Jr., a former member of the firm. Plaintiffs' complaint was filed on 29 August 1984. Defendants filed an answer alleging that the complaint fails to state a claim for relief against any of the defendants.

In the pleadings, depositions, interrogatories, admissions of file and affidavits, evidence is presented which tends to show the following:

Craighill, Rendleman, Clarkson, Ingle & Blythe, P.A., was an incorporated law firm, or professional association. Francis O. Clarkson, Jr., was on its board of directors and was one of its employees. Plaintiff Alfred McGarity had been a client of the firm since 1971. The firm had performed various legal services for him and his business, Carolina Institutional Sales.

In October of 1982, Mr. Clarkson asked Mr. McGarity if he was interested in investing in a coal mining operation. Mr. McGarity and his brother, plaintiff William McGarity, both decided to take part. In February 1983 they each delivered $15,000.00 to Mr. Clarkson to invest in the mining operation, and Mr. Clarkson delivered various related documents to them.

On or about 3 October 1983, the firm and Mr. Clarkson reached an agreement whereby Mr. Clarkson was to relinquish his stock in the firm effective 30 September 1983. The other members of the firm stated that, over a period of time, Mr. Clarkson's "way of practicing law . . . didn't fit in too well with the Firm." He was out of the office frequently, generated less and less revenue for the firm, failed to keep accurate time records, and failed to log many long-distance calls. Prior to Mr. Clarkson's resigna-

tion, the other members of the firm asked him to change some of his practices, but never confronted him to ascertain what he was doing with his time or why his practices were not in conformity with the rest of the firm's.

While Mr. Clarkson had been a member of the firm he had told Alfred McGarity that from time to time he "had clients that had recoveries on the horizon" and needed "unsecured capital." Clarkson had invited Mr. McGarity to let him invest his money by lending it to these clients. On several occasions, Mr. McGarity did lend his money to Mr. Clarkson, in varying amounts, with the understanding that it would be lent to Mr. Clarkson's clients. The first loan transaction of this type occurred in December of 1982. The final one occurred on 6 December 1983. On that date, Mr. McGarity delivered to Mr. Clarkson $15,000.00 and Mr. Clarkson executed a note for $18,000.00 payable in 60 days to Mr. McGarity. Mr. Clarkson wrote a check for payment of the note dated 24 February 1984. It was returned for insufficient funds.

Neither Alfred nor William McGarity ever received any accounting for the money they loaned Mr. Clarkson to invest in the coal mine.

On 9 March 1984, an order for relief under 11 U.S.C. Sec. 7 was entered on a petition filed against Mr. Clarkson. All of plaintiffs' claims against Mr. Clarkson have been discharged in bankruptcy.

Based on this evidence, defendants made a motion for summary judgment. The court granted defendants' motion and dismissed plaintiffs' claim.

*James, McElroy & Diehl, P.A., by Edward T. Hinson, Jr., and Judith E. Egan, for plaintiffs, appellants.*

*Smith, Helms, Mulliss & Moore, by E. Osborne Ayscue, Jr., and Benne C. Hutson, for defendants, appellees.*

HEDRICK, Chief Judge.

Plaintiffs contend that the trial court erred to their prejudice in granting defendants' motion for summary judgment. Plaintiffs argue that there is a genuine issue of material fact in that there is evidence which shows that defendants are liable to plaintiffs for Mr. Clarkson's conversion under four theories.

[1]   The first of these theories is agency. Plaintiffs claim that Mr. Clarkson was an agent of the firm, and was acting within the apparent scope of his authority when he solicited and accepted the loans, and thus the firm is liable for his conversion of the loans.

An agent is one who acts for or in place of another by authority from him. *Trust Co. v. Creasy*, 301 N.C. 44, 269 S.E. 2d 117 (1980). An act of an agent done within the scope of his authority is binding on his principal. *Grubb v. Motor Co.*, 209 N.C. 88, 182 S.E. 730 (1935). This includes not only the acts done within the agent's actual authority, but also those done within his "apparent authority." *Id.* An agent's apparent authority is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974). It has also been described as the power the third person who dealt with the agent had a right to infer that he possessed, from his own acts and those of his principal. *Transit, Inc. v. Casualty Co.*, 20 N.C. App. 215, 201 S.E. 2d 216 (1973), *aff'd*, 285 N.C. 541, 206 S.E. 2d 155 (1974). The scope of an agent's apparent authority is determined not by the agent's own representations but by the manifestations of authority which the principal accords to him. *Pipkin v. Thomas & Hill, Inc.*, 33 N.C. App. 710, 236 S.E. 2d 725 (1977), *rev'd in part*, 298 N.C. 278, 258 S.E. 2d 778 (1979).

In the present case, plaintiffs have not presented enough evidence to raise a genuine issue of material fact as to whether Mr. Clarkson was acting within the scope of his apparent authority when he solicited and accepted the money from the McGaritys. The firm was not in the business of soliciting or accepting money for investment purposes, and there is no evidence that it had ever done so. The firm was not authorized to do so by its articles of incorporation. There is no evidence that Mr. Clarkson's acts could have benefitted the firm in any way. There is no evidence that any other member of the firm knew or should have known about Mr. Clarkson's soliciting and accepting the money. Thus the firm could not have committed any acts to hold Mr. Clarkson out as having the authority to do so. Therefore, there was no such authority, under the principle that the scope of an agent's apparent authority is determined by the acts of the principal, not the agent.

In support of their argument, plaintiffs rely heavily on *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974). In that case, a lawyer shareholder-employee in an incorporated law firm accepted money from a client who understood that it would be invested by the lawyer in a certain stock. The client never received the stock, and sued for delivery of it or its value. The defendant law firm's motion for summary judgment was granted. Our Supreme Court reversed, holding that the plaintiff's evidence raised a genuine issue of material fact as to whether the lawyer had had apparent authority to accept the money.

The court, in *Zimmerman*, stated that the law of apparent authority is "difficult to apply" because "each case turns largely upon the unique facts presented." *Id.* at 32, 209 S.E. 2d at 800. The facts in *Zimmerman* are quite different from those in the present case. Unlike defendant professional association in the present case, which is empowered by its articles only to render services involved in or ancillary to the practice of law, the defendant professional association in *Zimmerman* was empowered by its Florida charter not only to practice law but also to "have and exercise all powers of any nature whatsoever permitted or conferred by law upon corporations in general, unless specifically prohibited by the Professional Services Corporation Act. . . ." *Id.* at 26, 209 S.E. 2d at 797. Unlike Mr. Clarkson in the present case, the offending lawyer in *Zimmerman* was the president and controlling shareholder of the professional association. Most importantly, in *Zimmerman* there was evidence that the other lawyer shareholder-employees were fully aware not only of the transaction in dispute, but also of the long-standing practice in that firm of making investments for clients. The Supreme Court found significance in each of these elements as it reached its decision that there was a genuine issue of material fact as to the lawyer's apparent authority to accept the money.

In the present case, however, with its much different fact situation, there is no such evidence that Mr. Clarkson was acting within the scope of his apparent authority. Therefore, his acts cannot be binding on the professional association and plaintiffs' first theory of liability fails as a matter of law.

[2] Plaintiffs' second theory of liability is that defendants were negligent in failing to supervise Mr. Clarkson adequately, and

their negligence proximately caused harm to plaintiffs. As with any negligence claim, plaintiffs may not recover unless there existed, at the time and place of inquiry, a duty on the part of defendants to exercise care for the protection of plaintiffs or their property. *Insurance Co. v. Sprinkler Co.*, 266 N.C. 134, 146 S.E. 2d 53 (1966). In order to show such a duty in the present case, plaintiffs would have to show that defendants owed a duty to detect and supervise Mr. Clarkson's activities which were outside the practice of law, which he had no authority to take, and of which defendants had no reason to know. Plaintiffs have not found and cannot find legal authority for such a proposition. Thus plaintiffs' second theory of liability fails as a matter of law.

Plaintiffs' third theory is that defendants have been unjustly enriched at plaintiffs' expense, and therefore must make restitution to plaintiffs. However, plaintiffs have not presented any evidence that defendants have been enriched in any way by the transactions in question. Without enrichment, there can be no "unjust enrichment." *Greeson v. Byrd*, 54 N.C. App. 681, 284 S.E. 2d 195 (1981), *disc. rev. denied*, 305 N.C. 299, 291 S.E. 2d 149 (1982).

[3] Plaintiffs' final theory of liability is based on subsections (a) and (c) of G.S. 78A-56. G.S. 78A-56(a) is the part of the North Carolina Securities Act providing for civil liability and criminal penalties for the offering and selling of securities by means of an untrue or misleading statement. G.S. 78A-56(c) reads, in pertinent part, "Every person who directly or indirectly controls a person liable under subsection (a) . . . , every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions . . . , are also liable jointly and severally with and to the same extent as such person, unless the person who is so liable sustains the burden of proof that he did not know, and did not act in reckless disregard, of the existence of the facts by reason of which the liability is alleged to exist." G.S. 78A-56(c) 1985.

We need not reach the question of whether Mr. Clarkson was liable under subsection (a), because whether he is or not, defendants cannot be liable under subsection (c), since there is no evidence whatsoever that they knew or acted in reckless disregard of the existence of the facts by reason of which the liability is

alleged to exist. Thus, plaintiffs' final theory of liability fails as a matter of law.

Since the pleadings, depositions, interrogatories, admissions of file and affidavits show that plaintiffs cannot succeed under any of their four theories of liability, there is no genuine issue of material fact, and defendants are entitled to judgment as a matter of law. Thus, summary judgment was appropriate.

Affirmed.

Judges ARNOLD and ORR concur.