Sosman, J.
Plaintiff Susan Fitzsimmons has brought the present action against attorneys Nicholas Soutter, David Kertzman, and Soutter & Kertzman, P.C., the firm through which the individual defendants previously practiced law. Fitzsimmons alleges that Soutter allowed substantial trust and personal assets *381 of the Fitzsimmons family to be dissipated through improper speculative investments. Kertzman now moves for summary judgment asserting that he is not, as a matter of law, personally or vicariously liable for the alleged wrongdoing of Soutter. For the following reasons, Kertzman’s motion is allowed in part and denied in part.
FACTS
The following material facts are not in dispute:
Fitzsimmons is the Administratrix of the Estate of Joseph T. Fitzsimmons, Jr. (her former husband) and the trustee of both the Fitzsimmons Family Trust and the Fitzsimmons Realty Trust.
On November 27, 1978, Joseph Fitzsimmons was severely and permanently injured in an accident. The defendant Soutter, who had been a longstanding social acquaintance of the Fitzsimmons family, filed suit on behalf of the Fitzsimmons against those allegedly responsible for the accident. In September 1980, Soutter successfully negotiated a settlement of the Fitzsimmonses’ claims. After paying liens and legal fees, the Fitzsimmons were left with $455,000 in settlement proceeds, approximately $300,000 of which was deposited in various accounts at Soutter’s law offices.
Following the settlement, Soutter agreed to furnish various ongoing services to the Fitzsimmonses, including estate planning, preparation of trust documents and tax returns, real estate transactions, and holding, investing and disbursing the funds from the settlement. The settlement proceeds were to be invested in conservative investments and the income disbursed on a monthly basis to cover the family’s living expenses.
Beginning in late 1980, Soutter, acting under a power of attorney, opened a securities account with the brokerage firm of Tucker Anthony. He allegedly made various speculative investments through his Tucker Anthony broker, William Libby. This account was eventually placed in the name of the Fitzsimmons Family Trust, which was established on April 1, 1982 with Soutter as its trustee. As trustee, Soutter allegedly continued to make speculative securities trades through Libby.
At the time Soutter had filed the personal injury suit on behalf of the Fitzsimmons, he practiced law under the title “The Law Offices of Nicholas B. Soutter.” Defendant Kertzman began working at Soutter’s law office as an associate in January 1979, approximately two months after the filing of the Fitzsimmonses’ tort action. In December 1981, approximately fifteen months after the settlement of the Fitzsimmonses’ personal injury claims, Kertzman and Soutter formed a professional corporation known as Soutter & Kertz-man, P.C. The arrangement between Soutter and Kertzman was that the firm’s earnings would be split evenly. In December 1985, Soutter & Kertzman, P.C. was disbanded. Kertzman himself then incorporated and practiced law as a professional corporation. In August 1987, he formed the firm of Grindle, Robinson & Kertzman, where he presently practices.
With regard to Fitzsimmons family matters, Fitzsimmons dealt directly with Soutter. Soutter told Fitzsimmons that Kertzman would handle some of the paperwork associated with their representation of the family’s interests, by which she understood that Sout-ter and Kertzman would work as a “team” on her and her family’s behalf. Fitzsimmons met or spoke with Kertzman on a total of two occasions.
Kertzman himself performed the following legal services on behalf of the Fitzsimmons family: participation in the personal injury action, preparation of several tax returns, notarization of various instruments, preparation of various documents for the Fitzsimmons divorce, execution of a check for a real estate transaction, drafting of deeds and trust instruments, and the delivery of one monthly check for the Fitzsimmonses’ living expenses. Kertzman never made investments on behalf of the Fitzsimmonses nor did he ever act in the capacity of an investment advisor to the Fitzsimmonses.
The management of the Fitzsimmons funds was handled directly by Soutter. Soutter charged fees for his services in handling the funds, billing the Fitzsimmons Family Trust under the Soutter & Kertzman, P.C. letterhead. All fees earned by Soutter in his capacity as trustee, including any fees charged for services related to investment and handling of the Fitzsimmonses’ funds, were paid to Soutter & Kertzman, P.C. and placed in the firm’s operating account. These fees would eventually be distributed to Soutter and Kertzman in the agreed-upon split of the firm’s profits.
Kertzman was aware of Soutter’s role as trustee and knew that Soutter was charging fees for administering the Trust. He also knew that Soutter was performing investment functions in his role as trustee for the Fitzsimmonses. Further, he knew Soutter was collecting fees from other Soutter & Kertzman, P.C. clients for investment-related services.
The Fitzsimmonses would frequently be paid their monthly stipend from a Soutter and Kertzman, P.C. client account bearing their name. This account was frequently overdrawn in and after 1983. In March 1989, Fitzsimmons became aware that the settlement proceeds had been dissipated when Soutter informed her that she would have to take out a mortgage on the family home in order to meet their living expenses. The present action was filed against Soutter, Kertzman and Soutter & Kertzman, P.C. in 1992.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further], that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. *382 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. ”[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Kertzman asserts that there are no genuine issues of material fact with respect to (1) his lack of involvement in the investment decisions of which plaintiff complains; (2) the investment services of Soutter being outside the scope of the law practice of Soutter & Kertzman, P.C.; and (3) the applicable statute of limitations being a bar to the action. Each of these arguments will be addressed separately.
A. Liability for Kertzman’s own negligence
To establish a claim against Kertzman for his own negligence, plaintiff must prove that he owed her a duty of care. In a legal malpractice action, the attorney-client relationship supplies the necessary duty. DeVaux v. American Home Assurance Co., 387 Mass. 814, 817 (1983). The relationship need not be expressed; it may be implied from the parties’ conduct. Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 522, cert. denied, 493 U.S. 894 (1989), quoting Page v. Frazier, 388 Mass. 55, 62 (1983).
An attorney-client relationship may be implied “when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney’s professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance ... In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it."
DeVaux, supra, 387 Mass. at 818, quoting Kurtenbach v. TeKippe, 260 N.W.2d 53, 56 (Iowa 1977).
However, and of particular import to the present case, “the fact that an attorney agreed to, or did, represent a client in a particular matter does not necessarily create an attorney-client relationship as to other matters or affairs of that client.” Robertson, supra, 404 Mass. at 522. See also DeVaux, supra, 387 Mass. at 816 n.6 (“agreement or consent of an attorney to represent a client in a particular matter does not create an attorney-client relationship as to other affairs of the client”).
The plaintiff first argues that because Soutter told her that Kertzman would be handling some of her legal paperwork, she felt they were acting as a “team” on all of her legal matters, including the investing and disbursement of the settlement proceeds. To bolster this argument, plaintiff notes that Kertzman delivered one monthly disbursement check to her.
However, plaintiff has failed to present any evidence that Kertzman was participating in the investing of her money or acting as her attorney in relation to those investments. Plaintiff concedes that she has no evidence that Kertzman actually participated in the handling or investment of the settlement proceeds. Kertzman explicitly denies any involvement in any decisions about the investment or management of the Fitzsimmonses’ funds. Simply because Kertzman performed unrelated legal work for the plaintiff does not create an attorney-client relationship encompassing every aspect of the plaintiffs financial affairs. See Page, supra, 388 Mass. at 62.
Plaintiff also argues that Kertzman should have been aware that the Fitzsimmonses’ investments were losing money through speculative trades and either warned her about them or stopped them altogether. His failure to do so, she argues, constitutes negligence. To support this theory, she alleges that disbursements were paid from the Soutter & Kertzman, P.C. client account, which frequently showed a negative balance. She argues that Kertzman had a duty to monitor the balance in that account. She also argues that Kertz-man should have learned that the Fitzsimmonses were losing money when he prepared their tax returns and worked on their divorce.
However, plaintiff has still failed to show that Kertz-man had any duty to her with regard to such matters. While the Fitzsimmonses certainly relied on Kertzman to prepare accurate tax returns, legally sufficient deed and trust documents, and divorce papers, no view of the facts presented on this motion could lead to a reasonable inference that Kertzman personally owed the Fitzsimmonses a duty to oversee Soutter’s handling of the Fitzsimmonses’ money. As discussed below, Kertzman’s relation to Soutter may make him liable for Soutter’s alleged misconduct, but that liability can not properly be characterized as anything other than a vicarious liability.
B. Vicarious liability
As a shareholder in Soutter & Kertzman, P.C. from 1981 to 1985, Kertzman’s liability for the negligent or wrongful conduct of Soutter is governed by Supreme Judicial Court Rule 3:06(3)(b). The Rule provides as follows;
All the individuals who are shareholders of the corporation at the time of any negligent or wrongful act, error or omission of any employee or employees of the corporation which occurs in the performance *383 of legal services by the corporation and which results in damages to the person or persons for whom the services were being performed shall be jointly and severally liable for such damages.
The Rule goes on to place dollar limits on a shareholder’s liability for the acts of others in the corporation.
Kertzman argues that Soutter’s investment-related services for the Fitzsimmonses were not “legal services” provided by the corporation and therefore any wrongdoing of Soutter with respect to investment matters would not result in liability on the part of other shareholders.[1] Ordinarily, investment activities would fall outside the scope of the practice of law. See Sheinkopf v. Stone, 927 F.2d 1259 (1st Cir. 1991) (applying Massachusetts law); McGarity v. Craighill, Rendelman, Ingle & Blithe, P.A., 349 S.E.2d 311, 313 (N.C.App. 1986); Rouse v. Pollard, 21 A.2d 801, 803 (N.J. Eq. 1941).
However, in the circumstances of the present case, plaintiff has submitted sufficient evidence to raise a genuine issue of material fact as to whether Soutter’s investment activities on behalf of the Fitzsimmonses should be treated as “legal services" provided by the corporation. First, both Soutter and Kertzman unquestionably had performed and continued to perform legal work on behalf of the Fitzsimmonses. They handled the Fitzsimmonses’ personal injury suit, drafted various trusts, deeds and other legal instruments, and handled the Fitzsimmonses’ divorce. Thus, there was an attorney-client relationship between Soutter and the Fitzsimmonses before (and during) Soutter’s investment activities. The investment of the funds was an undertaking that arose out of the firm’s representation of the Fitzsimmonses in the original action, and was part and parcel of the estate and financial planning services that the firm continued to render after the settlement proceeds were received. Compare Sheinkopf, supra, 927 F.2d at 1265 (attorney provided investment advice to individual who was not a client on any matter).
Second, Soutter billed fees to the Fitzsimmonses for his investment-related work. Those bills were sent under the Soutter & Kertzman, P.C. letterhead. All fees earned by Soutter in his role as an investor went into the firm’s operating account. These fees would eventually be distributed equally between Soutter and Kertzman. Again, the Sheinkopf case, on which Kertzman’s motion relies, is readily distinguishable, as the attorney in that case did not bill the plaintiff any fees for his investment advice. Id.
Finally, Kertzman knew Soutter was acting as trustee of the Fitzsimmons Family Trust. He knew Soutter was making investments on behalf of the Fitzsimmonses and other clients as part of the firm’s practice. Compare McGarity, supra, 349 S.E.2d at 313 (firm did not know that one of its attorneys was soliciting investments); Rouse, supra, 21 A.2d at 803-04 (firm did not have a practice of investing clients’ funds).
Plaintiff has met her burden of coming forward with admissible evidence tending to show, or from which it could be inferred, that Soutter’s investment activities occurred within the course of legal services provided to clients of the firm. Thus, Kertzman may be jointly and severally liable for Soutter’s “negligent or wrongful act, error or omission” in the handling of the Fitzsimmons funds. Supreme Judicial Court Rule 3:06(3) (b).
C. Statute of limitations
Kertzman argues that the statute of limitations bars the plaintiffs claims against him because it is undisputed that he left Soutter & Kertzman, P.C. in 1985, seven years prior to the commencement of this action. Plaintiff claims, however, that she did not discover Soutter’s alleged wrongdoing until March 1989, less than three years prior to the filing of this suit. According to plaintiff, the monthly stipend checks continued to be received until that date. Absent undisputed facts showing that plaintiff knew or should have known of the damage to her prior to 1989, Kertzman is not entitled to summary judgment on his statute of limitations defense.
ORDER
For the foregoing reasons, defendant David Kertzman’s motion for summary judgment is ALLOWED as to all claims against Kertzman for his own individual negligence and DENIED with respect to claims against him for vicarious liability pursuant to Supreme Judicial Court Rule 3:06(3)(b) or G.L.c. 108A, §§13 and 15.

 Inexplicably, Kertzman’s brief devotes most of its argument on this subject attempting to convince the court that he was not a “partner,” either actual or by estoppel, with Soutter. Whatever Kertzman’s relationship to Soutter prior to the formation of the professional corporation, the record clearly establishes that he was, from 1981 to 1985, a shareholder in Soutter & Kertzman, P.C. As such, he would be liable to the extent set forth in Supreme Judicial Court Rule 3:06(3). If for some reason the firm was not properly formed as a professional corporation, plaintiff has at least put forward sufficient facts to establish that Soutter and Kertzman held themselves out as partners. A partner would be liable for “any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his co-partners.” G.L.c. 108A, §§13 and 15. Plaintiff has also put forth sufficient facts tending to show that Soutter’s investment-related activities for the Fitzsimmonses (and other clients) were undertaken in the ordinary course of the firm’s business and billed for by the firm, all with Kertzman’s knowledge. If the firm is in fact a partnership and not a professional coiporation, plaintiff has come forward with sufficient evidence to withstand a summary judgment motion as to Kertzman’s liability as a partner.