JAMES DEWEY MILON AND ROSA P. MILON, PLAINTIFFS v. DUKE UNIVERSITY; DUKE UNIVERSITY HEALTH SYSTEM, INC.; PRIVATE DIAGNOSTIC CLINIC, LLP; PRIVATE DIAGNOSTIC CLINIC, PLLC; DAVID F. PAULSON, M.D.; PETER S.A. GLASS, M.D.; AND MARY CRODELLE, CRNA, DEFENDANTS

No. COA00-1246

(Filed 21 August 2001)

**1. Arbitration and Mediation— arbitration agreement—wife signing husband's name—apparent authority**

The trial court erred in a medical malpractice action by concluding the parties' arbitration agreement was not binding based on the fact that plaintiff wife signed her husband's name to the

MILON v. DUKE UNIV.

[145 N.C. App. 609 (2001)]

agreement, because: (1) the evidence is sufficiently strong to establish that at the times plaintiff wife signed her husband's name, she did so with apparent authority from her husband; and (2) defendants exercised reasonable prudence in relying on plaintiff wife's apparent authority to act on behalf of her husband in signing his name to the arbitration agreement.

**2. Arbitration and Mediation— arbitration agreement— waiver**

The trial court erred in a medical malpractice action by failing to determine whether defendants waived their right to compel arbitration by reason of prejudice to plaintiffs caused by any delay or actions defendants have taken which are inconsistent with arbitration.

**3. Arbitration and Mediation— arbitration agreement—mistake—lack of mutual assent—overreaching—unfair advantage—undue influence—constructive fraud**

The trial court erred in a medical malpractice action by failing to determine whether the parties' arbitration agreement was the result of mistake, lack of mutual assent, overreaching, unfair advantage, undue influence, and/or constructive fraud.

Judge THOMAS dissenting.

Appeal by defendants from an order entered 26 June 2000 by Judge James C. Spencer, Jr. in Durham County Superior Court. Heard in the Court of Appeals 6 June 2001.

*Bugg, Wolf & Wilkerson, P.A., by John E. Bugg; and Miller & Martin, LLP, by Gayle Malone, Jr., for plaintiffs-appellees.*

*Fulbright & Jaworski L.L.P., by John M. Simpson and Karen M. Moran; and Moore & Van Allen, PLLC, by Charles R. Holton, for defendants-appellants Duke University, Duke University Health System, Inc., Private Diagnostic Clinic, LLP, Private Diagnostic Clinic, PLLC, Peter S.A. Glass, M.D., and Mary Crodelle, CRNA.*

*Patterson, Dilthey, Clay, & Bryson, by Mark E. Anderson, for defendant-appellant David F. Paulson, M.D.*

MILON v. DUKE UNIV.

[145 N.C. App. 609 (2001)]

WALKER, Judge.

This action involves a dispute over defendants' right to compel arbitration in a medical malpractice case. From 3 April 1995 through 24 March 2000, plaintiff James Dewey Milon, was treated regularly by Dr. Warren A. Blackburn at Franklin Family Medicine (Franklin) in Louisburg, North Carolina. On 1 May 1998, the Private Diagnostic Clinic, LLP and the Private Diagnostic Clinic, PLLC (collectively PDC), purchased the Franklin practice and Dr. Blackburn became a PDC member.

The PDC is a professional limited liability company that is separate from Duke University (Duke) and Duke University Health System (Duke Health). However, PDC members hold positions on the Duke University Medical School faculty and they have the option of providing health services to patients at Duke through their PDC affiliation. Upon PDC's purchase of Franklin, the office continued to operate under the name of Franklin Family Medicine.

Mr. Milon underwent surgery at Duke University Medical Center for prostate cancer on 22 December 1998. Immediately after the surgery, Mr. Milon suffered from irreversible paralysis from the waist down. Mr. and Mrs. Milon contended that the paralysis was the result of medical negligence on the part of defendants, and they retained counsel in February 1999 to represent them in their claims against defendants for injuries and damages.

As of June 1999, defendants Dr. Blackburn and the Franklin staff were aware that the Milons were represented by counsel concerning the malpractice claims. In July 1999, the Milons' counsel and defendants' counsel agreed to a pre-suit non-binding mediation of the Milons' malpractice claims. On 12 October 1999, defendants' counsel provided all medical records concerning Mr. Milon's treatment to his counsel. On 8 November 1999, the mediation was conducted but was unsuccessful.

On 8 December 1999, Mr. Milon saw Dr. Blackburn at Franklin for treatment of his ongoing pain and to review his medications. Defendants assert that plaintiffs were presented with an "Assignment of Benefits" form at this visit. The "Assignment of Benefits" form is a one-page document with three sections which are: (1) a Release of Medical Information to Insurance Company, (2) an Agreement to Alternative Dispute Resolution (arbitration agreement), and (3) a Statement of Financial Responsibility. Each of these three sections of the form has separate signature lines.

The second section is the arbitration agreement at issue, and it provides for final and binding arbitration as follows:

AGREEMENT TO ALTERNATIVE DISPUTE RESOLUTION

In accordance with the terms of the United States Arbitration Act, I agree that any dispute arising out of or related to the provision of health care services to me by Duke University, the Private Diagnostic Clinic (PDC), or their employees, physician partners, and agents, shall be subject to final and binding resolution exclusively through the Health Care Claim Settlement Procedures of the American Arbitration Association, a copy of which is available to me upon request. I understand that this agreement includes all health care services which previously have been or will in the future be provided to me and that this agreement is not restricted to those health care services rendered in connection with this admission or visit. I understand that this agreement is voluntary and is not a precondition to receiving health care services[.]

NOTE: If the individual signing this agreement is doing so on behalf of his or her minor child or any other person for whom he or she is legally responsible, the signature below affirms that he or she has the authority or obligation to contract with Duke University and the PDC for the provision of health care services to that minor child or other person, and that his or her execution of this agreement is in furtherance of that authority or obligation.

12-8-1999         James D. Milon (signature)
DATE              Patient, Parent, Guardian, or
                  Authorized Representative

The arbitration agreement also states under the signature line:

If the signature is not that of the Patient, Parent, or Guardian, indicate below the relationship of person signing for the Patient and the reason Patient is unable to sign.

Relationship:_____

Reason Patient unable to sign:_____

The name James D. Milon or James Milon is written on the signature lines in each of the three sections. The line requesting the relationship between the person signing and the patient is blank. Neither Dr. Blackburn nor the Franklin staff witnessed the signing of Mr.

Milon's name on the form, but defendants' handwriting expert concluded that Mrs. Milon signed her husband's name to the form. Plaintiffs' handwriting expert did not dispute this finding.

Two members of the Franklin staff testified in their depositions that upon the execution of an arbitration agreement, the date of agreement is entered into the patient's records on the computer system. Additionally, a copy of the signed arbitration agreement is sent from Franklin to Duke.

Plaintiffs filed a complaint on 23 December 1999 alleging medical negligence and loss of consortium. Thereafter, they served defendants with interrogatories and requests for production of documents. On 6 March 2000, plaintiffs filed an amended complaint. On 10 March 2000, counsel for defendants conducted a search for all of Mr. Milon's medical records. This search revealed that Mr. Milon was being treated at Franklin and that his Franklin medical records contained the arbitration agreement dated 8 December 1999.

On 24 March 2000, defendants filed a motion to compel arbitration. In the alternative, defendants moved for dismissal of all of plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(3) of the North Carolina Rules of Civil Procedure. Thereafter, the parties engaged in further discovery, and after a hearing, the trial court denied defendants' motion to compel arbitration or to dismiss the complaint.

In its order, the trial court concluded that there was credible evidence that Mrs. Milon signed her husband's name to the agreement, but that there was "no credible evidence that James Dewey Milon knew of, authorized, consented to or ratified Rosa P. Milon so doing or that James Dewey Milon authorized Rosa P. Milon or any other person to act as his agent or authorized the writing of his name on the [arbitration agreement]." The trial court concluded that "there does not exist any valid or enforceable agreement between the parties that would require the arbitration of the plaintiffs' claims against the defendants."

I.

[1] Defendants contend that the arbitration agreement is binding, since Mrs. Milon acted as Mr. Milon's agent when she signed his name to the agreement. Plaintiffs maintain that Mrs. Milon did not have the authority to bind Mr. Milon to the arbitration agreement; and even if she did, the agreement is not valid because it is the result of mistake, lack of mutual assent, overreaching, unfair advantage, undue influ-

MILON v. DUKE UNIV.

[145 N.C. App. 609 (2001)]

ence and/or constructive fraud. Furthermore, plaintiffs contend that defendants' delay and use of judicial discovery procedures prior to seeking arbitration are prejudicial such that defendants have waived any contractual right to compel arbitration.

Our Supreme Court has defined an agent as "one who acts for or in the place of another by authority from him." *Trust Co. v. Creasy*, 301 N.C. 44, 56, 269 S.E.2d 117, 124 (1980), *citing Julian v. Lawton*, 240 N.C. 436, 82 S.E.2d 210 (1954). Neither a husband nor a wife has the power to act as agent for the other simply by virtue of the marital relationship. *Beaver v. Ledbetter*, 269 N.C. 142, 146, 152 S.E.2d 165, 169 (1967). However, the agency of one spouse for the other "may be shown by direct evidence or by evidence of such facts and circumstances as will authorize a reasonable and logical inference that [one] was empowered to act for [the other]." *Boyd v. Drum*, 129 N.C. App. 586, 591, 501 S.E.2d 91, 96 (1998), *aff'd*, 350 N.C. 90, 511 S.E.2d 304 (1999).

In the case at bar, defendants contend that Mrs. Milon had either actual or apparent authority to act on behalf of her husband. Defendants point to the testimony by the Franklin staff, which reveals that, after Mr. Milon's surgery, Mrs. Milon would check her husband in at Franklin, fill out paperwork for him, and either sign her name or her husband's name to his medical records. Mrs. Milon also signed Mr. Milon's name to his medical records at various times when he was not well enough to do so himself, as well as times when he was capable of signing for himself. Further, Mrs. Milon had signed her husband's name in his presence, including when she signed his name on the arbitration agreement. Additionally, there was other evidence that Mrs. Milon had signed her husband's name on documents other than his medical records.

Even if the evidence does not establish that Mrs. Milon acted with the actual authority to sign her husband's name, we must decide whether she had apparent authority to so act. *See Research Corporation v. Hardware Co.*, 263 N.C. 718, 140 S.E.2d 416 (1965) (holding that the principle is bound not only by the acts of the agent within the agent's express authority, but also by the acts of the agent within his apparent authority). Apparent agency is created where "a person by words or conduct represents or permits it to be represented that another person is his agent" when no actual agency exists. *Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 278, 357 S.E.2d 394, 397 (1987).

**MILON v. DUKE UNIV.**

[145 N.C. App. 609 (2001)]

In regard to apparent or implied authority, "a [husband] may constitute the [wife] his agent, but, to establish this the evidence must be clear and satisfactory, and sufficiently strong to explain and remove the equivocal character in which [he] is placed by reason of [his] relation of [husband]." *Pitt v. Speight*, 222 N.C. 585, 588, 24 S.E.2d 350, 352 (1943). "The scope of an agent's apparent authority is determined not by the agent's own representations but by the manifestations of authority which the principal accords to him." *McGarity v. Craighill, Randleman, Ingle & Blyth, P.A.*, 83 N.C. App. 106, 109, 349 S.E.2d 311, 313 (1986).

Here, contrary to the trial court's conclusion, the evidence is sufficiently strong to establish that at the times Mrs. Milon signed her husband's name, she did so with apparent authority from her husband. Therefore, we conclude Mrs. Milon had the apparent authority to bind her husband to the arbitration agreement by signing his name on 8 December 1999.

Even though Mrs. Milon acted with apparent authority in signing Mr. Milon's name to the arbitration agreement, it must still be determined if defendants acted in reliance on this apparent authority. Apparent authority, so far as third persons are concerned, is the real authority, as long as the third person "dealt with the agent in reliance, thereon, in good faith, and in the exercise of reasonable prudence, in which case the principal will be bound by the acts of the agent . . . ." *Norfolk Southern Ry. v. Smitherman*, 178 N.C. 595, 101 S.E. 208, 210 (1919). Also, this Court has held:

> Where a person by words or conduct represents or permits it to be represented that another person is his agent, he will be estopped to deny the agency as against third persons who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact.

*Hayman* at 278, 357 S.E.2d at 397.

In the present case, staff at Franklin had previously relied on Mrs. Milon's apparent authority to sign her husband's name to his medical records. Thus, defendants, through their Franklin office, exercised reasonable prudence in relying on Mrs. Milon's apparent authority to act on behalf of her husband in signing his name to the arbitration agreement.

MILON v. DUKE UNIV.

[145 N.C. App. 609 (2001)]

## II.

**[2]** Defendants next contend they "have not done or failed to do anything in the present lawsuit that would estop them from seeking arbitration or that would constitute a waiver of their rights to have the Milons' claim arbitrated."

Initially, we note the strong public policy in North Carolina favors settling disputes by means of arbitration. *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984). Because of this strong policy, courts must closely scrutinize any allegation of waiver of such a favored right. *Id.* Arbitration is not a legal right; it is a matter of contract which may be waived. *Sullivan v. Bright*, 129 N.C. App. 84, 497 S.E.2d 118 (1998). Whether waiver has occurred is a question of fact. *Id.*

In *Cyclone*, our Supreme Court addressed the issue of waiver and held:

> Because of the reluctance to find waiver, we hold that a party has impliedly waived its contractual right to arbitration if by its delay or by actions it takes which are inconsistent with arbitration, another party to the contract is prejudiced by the order compelling arbitration.

> A party may be prejudiced if, for example, it is forced to bear the expenses of a lengthy trial; evidence helpful to a party is lost because of delay in the seeking of arbitration; a party's opponent takes advantage of judicial discovery procedures not available in arbitration; or, by reason of delay, a party has taken steps in litigation to its detriment or expended significant amounts of money thereupon.

*Id.* at 229, 230, 321 S.E.2d at 876-77 (citations omitted).

Here, the trial court did not address the issue of whether defendants waived their right to compel arbitration by reason of prejudice to plaintiffs. The lawsuit was initially filed on 23 December 1999. Defendants did not immediately file a responsive pleading, but were granted an extension of time. Plaintiffs then filed an amended complaint on 6 March 2000. Even though discovery was ongoing, defendants contend they first became aware of the arbitration agreement on 10 March 2000. Subsequently, defendants moved to compel arbitration on 24 March 2000. On remand, the trial court must determine

whether plaintiffs have been prejudiced such that defendants have waived their right to compel arbitration.

## III.

[3] Plaintiffs contend that the arbitration agreement was not the result of mutual assent, but rather was the result of mistake, lack of mutual assent, overreaching, unfair advantage, undue influence, and/or constructive fraud.

Before a dispute may be arbitrated, there must first exist a valid agreement to arbitrate. N.C. Gen. Stat. § 1-567.2 (1999). A party seeking to compel arbitration must show that the parties mutually agreed to arbitrate their disputes. *Routh v. Snap-On Tools*, 108 N.C. App. 268, 271-72, 423 S.E.2d 791, 794 (1992).

Here, the trial court failed to address whether the arbitration agreement was the result of mistake, lack of mutual assent, overreaching, unfair advantage, undue influence, and/or constructive fraud. Therefore, the order is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.

Reversed and remanded.

Judge McCULLOUGH concurs.

Judge THOMAS dissents.

THOMAS, Judge, dissenting.

Because Mrs. Milon did not have apparent authority to enter into an arbitration agreement on behalf of her husband, and because defendants could not have reasonably and prudently relied on the arbitration form as signed by her, I respectfully dissent.

Apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974). Apparent authority does not arise simply by virtue of marriage. *Beaver v. Ledbetter*, 269 N.C. 142, 146, 152 S.E.2d 165, 169 (1967). Thus, Mrs. Milon, as Mr. Milon's wife alone, did not have apparent authority to contract on his behalf.

The majority holds Mrs. Milon had the apparent authority to bind her husband to an arbitration agreement because there was evidence

she earlier signed some documents for him. When deciding whether past conduct gives rise to apparent authority, however, it is the purported principal's conduct, not that of the agent, which must be considered. *McGarity v. Craighill, Rendleman, Ingle & Blythe, P.A.*, 83 N.C. App. 106, 349 S.E.2d 311 (1986), *disc. rev. denied*, 319 N.C. 105, 353 S.E.2d 112 (1987). Thus, Mrs. Milon's past conduct alone is not determinative of whether she had apparent authority to bind her husband to an arbitration contract.

Under *McGarity*, the primary focus should be the conduct of Mr. Milon in determining whether Mrs. Milon had apparent authority to bind him to the arbitration contract. *Id.* There is *no* evidence that Mr. Milon ever permitted Mrs. Milon to sign his name to any documents. Mr. Milon has neither held Mrs. Milon out as possessing the authority to act as his agent in signing contracts for him, nor has he permitted Mrs. Milon to represent that she possesses such authority. On the occasion in question, in fact, Mr. Milon denied having seen the form or seen his wife sign the form and denied allowing her in any way to sign it for him.

The trial court's findings in this regard are unequivocal. The trial court found

there has been *no credible evidence* presented that James Dewey Milon signed the Agreement to Alternative Dispute Resolution, agreed to submit the claims which are the subject of this action to arbitration, authorized any person to bind him to such arbitration or authorized any person to act as his agent in writing his name on the Agreement to Alternative Dispute Resolution.

(Emphasis added). Further, the court found "there is *no credible evidence* that James Dewey Milon knew of, authorized, consented to or ratified Rosa P. Milon so doing or that James Dewey Milon authorized Rosa P. Milon or any other person to act as his agent or authorized the writing of his name on the Agreement to Alternative Dispute Resolution." (Emphasis added). When the trial court is the factfinder, its findings of fact are conclusive on appeal if they are supported by any competent evidence, even though there is evidence which might support a contrary finding. *See Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975). Here, there is competent evidence to support the above findings.

Even simply considering Mrs. Milon's past conduct alone in determining whether she had apparent authority, however, there is no evi-

dence Mrs. Milon had previously signed her husband's name in his presence. In fact, there is evidence that the only instances she ever signed for him were in situations where he was unable to do so himself—when he was receiving medical treatment in an emergency room on one occasion, and when she went to a pharmacy without him to fill his prescriptions.

It is not insignificant that Mrs. Milon merely signed Mr. Milon's name, not her own name, on the arbitration form. The clear language of the form requires the signer to sign his or her own name and states that if the signer is not the patient, or the parent or guardian of the patient, then the signer is to indicate his/her relationship to the patient, as well as the reason the patient is unable to sign the form. Mrs. Milon, as the signer, did not indicate her relationship to Mr. Milon and the reason he was unable to sign the form himself. The arbitration contract, therefore, would appear unenforceable under its own terms.

While the trial court correctly concluded Mrs. Milon did not have apparent authority to bind her husband to the terms of an arbitration agreement, even if she had such authority under the circumstances to enter into an arbitration agreement, defendants did not reasonably and prudently rely on it.

A third party, in order to avail itself of the privileges of a contract between itself and a principal's apparent agent, must have relied on the agent's authority "in good faith, and in the exercise of reasonable prudence[.]" *Norfolk Southern Ry. Co. v. Smitherman*, 178 N.C. 595, 599, 101 S.E. 208, 210 (1919). *See also Lucas v. Li'l General Stores*, 289 N.C. 212, 221 S.E.2d 257 (1976); *Zimmerman*, 286 N.C. 24, 209 S.E.2d 795 (1974); *Edgecombe Bonded Warehouse Co. v. Security Nat'l Bank*, 216 N.C. 246, 4 S.E.2d 863 (1939). Further, the third party must have "*actually relied* upon the assertions of the principal regarding the purported agent's power at the time of the transaction." *Knight Publishing Co., Inc. v. Chase Manhattan Bank*, 125 N.C. App. 1, 15, 479 S.E.2d 478, 487 (1997), *disc. rev. denied*, 346 N.C. 280, 487 S.E.2d 548 (1997) (emphasis in original).

Defendants were entirely unaware of the signed form until the parties were well into the discovery phase of the litigation. However, they were aware that Mr. Milon had retained counsel, mediation had failed and suit was imminent. Furthermore, defendants may not claim that they relied on the arbitration agreement when they finally did move to compel arbitration, because they did not do so *at the time of*

MILON v. DUKE UNIV.

[145 N.C. App. 609 (2001)]

*the transaction,* as *Knight* requires. *Id.* Mr. Milon's surgery was on 22 December 1998. The mediation took place on 8 November 1999. The form was signed at Dr. Blackburn's office on 8 December 1999. Plaintiffs filed their complaint on 23 December 1999 and amended it on 6 March 2000. Defendants did not file their motion to compel arbitration until 24 March 2000. Defendants thus may not rely on apparent authority to assert that Mrs. Milon effectively contracted with defendants on his behalf.

In this case, there can be no reasonable and prudent reliance, essential for apparent authority to develop into a binding contract, where: (1) the form was given to plaintiffs after all of the parties had obtained legal representation, mediation failed and suit was imminent; (2) the IQ of Mr. Milon was sixty-nine and that of his wife, sixty-five; (3) the record supports a finding that the signing was a mistake; and (4) both Mr. and Mrs. Milon were on medication, including anti-depressants to help them deal with the stress of their worsening situation.

The majority correctly points out that "[a] party seeking to compel arbitration must show that the parties mutually agreed to arbitrate their disputes." They go on to hold, however, that the trial court failed to address certain issues in making that determination. I believe those issues were addressed in the trial court's finding that there was no authority (apparent or otherwise) to bind Mr. Milon to a contract. While ordinarily the IQs of the Milons, their medical condition and the fact they were on anti-depressants would not defeat a contract under apparent authority, here defendants were in the unique position of having dealt with plaintiffs for years. Their medical records were in the possession of some of defendants with the anti-depressants having been prescribed by Dr. Blackburn, an affiliate of PDC. The lack of a meeting of the minds here is inherent in the trial court's finding of there being no credible evidence presented by defendants to show otherwise. Thus, there is no enforceable agreement.

Because of the lack of apparent authority and no reliance on the part of defendants as to the arbitration agreement, I respectfully dissent and vote to affirm the trial court.