THE KNIGHT PUBLISHING CO., INC., PLAINTIFF v. THE CHASE MANHATTAN BANK, N.A. AND FIRST UNION NATIONAL BANK OF NORTH CAROLINA, DEFENDANTS

No. COA95-351

(Filed 7 January 1997)

1. **Banks and Other Financial Institutions § 96 (NCI4th); Negotiable Instruments and Other Negotiable Paper § 24 (NCI4th)— checks—indorsement not substantially similar to payee—liability of drawee banks**

Defendant drawee banks were liable under UCC § 4-401 for charging plaintiff's account for checks lacking indorsement by the named payee where the checks were payable to "Graphic Image" but were indorsed "Color Graphic Prep." The indorsements were not effective under former UCC § 3-405, even if an employee of plaintiff drawer supplied plaintiff with the name of the payee intending the latter to have no interest in the check, because the statute is applicable only when the indorsement is "in the name of a named payee"; this provision requires an indorsement substantially similar to the name of the payee; and "Color Graphic Prep." is not substantially similar to "Graphic Image." Furthermore, the courts are not required to engage in a loss causation analysis to determine whether plaintiff drawer's alleged negligence in failing to prevent a fraudulent scheme involving issuance of the checks should result in the application of § 3-405 to bar its claim against defendant banks. N.C.G.S. §§ 25-3-405, 25-4-401.

1

Am Jur 2d, Banks §§ 538 et seq.; Bills and Notes §§ 704 et seq.

2. **Banks and Other Financial Institutions § 96 (NCI4th)— wrongful payment of check—drawee bank—New York law**

In accordance with UCC § 4-102(2), the trial court properly applied New York law to the plaintiff's wrongful payment action against a bank located in New York. The defendant's liability was governed by the place where the bank was located.

Am Jur 2d, Banks §§ 538 et seq.

3. **Banks and Other Financial Institutions § 96 (NCI4th)— wrongful payment of check—drawee bank liable—depository bank absolved**

The trial court did not err in holding defendant Chase Bank liable as drawee while absolving the depository bank, defendant First Union Bank, where Chase made no claim in the instant action for indemnification against First Union.

Am Jur 2d, Banks §§ 538 et seq.

4. **Banks and Other Financial Institutions § 96 (NCI4th) — unauthorized indorsement—failure to show agency relationship.**

Defendant drawee bank's evidence was insufficient to show that Graphic Color Prep., a film preparation business operated on the same premises as Graphic Image, Inc., a printing company, had either actual or apparent authority to indorse checks made payable to Graphic Image.

Am Jur 2d, Banks §§ 538 et seq.

5. **Banks and Other Financial Institutions § 96 (NCI4th)— unauthorized indorsement of check—wrongful payment— statute of limitations**

Defendant bank could not rely on the 180-day statute of limitations period set forth in its "Account Conditions" to bar plaintiff's claim based on the bank's payment of checks lacking the indorsement of the named payee where UCC § 4-406(5) provides a three-year statute of limitations period within which to discover and report unauthorized indorsements.

Am Jur 2d, Banks §§ 538 et seq.

KNIGHT PUBLISHING CO. v. CHASE MANHATTAN BANK

[125 N.C. App. 1 (1997)]

**6. Appeal and Error § 418 (NCI4th)— UCC—negligence— material questions of fact—brief—no argument—no citation**

The Court of Appeals declined to discuss defendant's assertion that, pursuant to UCC § 3-406, plaintiff publishing company's negligence created material questions of fact precluding entry of summary judgment in favor of plaintiff. Defendant's appellate brief contained no argument and no citation of authority.

**Am Jur 2d, Appellate Review §§ 544, 545, 547, 550, 553-555, 557.**

**7. Judgments § 649 (NCI4th)— UCC—substantive law—interest on judgment—applicable law**

New York law governed the award of interest on the sum due from defendant drawee bank for charging plaintiff's account with improperly indorsed checks where defendant is a New York bank and the substantive law of New York applied to plaintiff's claim. N.C.G.S. § 25-4-102(2).

**Am Jur 2d, Interest and Usury §§ 59 et seq.**

**8. Judgments § 652 (NCI4th)— wrongful payment of checks— accrual of prejudgment interest**

The trial court did not err in its calculation of prejudgment interest from the date plaintiff notified defendant Chase Bank of its improper payments. Pursuant to New York law interest arising out of a breach contract requires that interest be charged from the date of breach. Plaintiff's cause of action against Chase could not be maintained until plaintiff demanded repayment for wrongly cashed checks drawn on plaintiff's account.

**Am Jur 2d, Interest and Usury §§ 63 et seq.**

Appeal by plaintiff and by defendant The Chase Manhattan Bank, N.A., from Order and Judgment filed 26 October 1994 and Final Order and Judgment filed 9 January 1995 by Judge Chase B. Saunders in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 January 1996.

*Smith Helms Mulliss & Moore, L.L.P., by Jonathan E. Buchan and Katherine T. Lange, and Blanchfield, Cordle & Moore, P.A., by Robert B. Cordle, for plaintiff.*

*Parker, Poe, Adams & Bernstein L.L.P., by William L. Rikard, Jr., and Craig T. Lynch, and First Union Corporation Legal Division, by Senior Vice President and Deputy General Counsel Francis C. Clark and Vice President and Assistant General Counsel Barbara H. Wright, for defendants.*

JOHN, Judge.

Plaintiff The Knight Publishing Co., Inc. (Knight) appeals the trial court's grant of summary judgment to defendant First Union National Bank of North Carolina (FUNB) on Knight's claim that FUNB improperly charged Knight's checking account in violation of Uniform Commercial Code (UCC) § 4-401. Defendant The Chase Manhattan Bank, N.A. (Chase) appeals the court's grant of summary judgment to Knight on the issue of whether Chase likewise breached its duty to Knight under UCC § 4-401.[1] Other issues presented concern potential defenses of each bank to Knight's claim and the parties' contentions regarding calculation of interest on the judgment in favor of Knight.

The factual and procedural background is somewhat complicated, but may be summarized as follows: Knight, owner and operator of the Charlotte Observer (the Observer), first employed Oren Johnson (Johnson) in the Observer's camera/platemaking department in 1969. From 1980 until his termination in 1992, Johnson served as head of this department. His duties included ordering and receiving materials, and approving the corresponding invoices for payment.

Beginning in 1985, Johnson participated with John Rawlins (Rawlins) and Lloyd Douglas Moore (Moore), owners of a Charlotte printing company named Graphic Image, Inc. (GII), in a conspiracy to defraud Knight. Pursuant to the scheme, GII would deliver bogus invoices to Johnson charging Knight for supplies never received. Johnson would approve payment of the invoices and forward them to the accounts payable department at Knight, which would issue checks (the checks) made payable to the order of "Graphic Image" in

---

1 Throughout the opinion, when citing UCC sections in a generic fashion, such as UCC § 4-401, we intend to refer to the statutes as they apply under both New York law, *see* N.Y. U.C.C. Law (McKinney 1991), and North Carolina law, *see* N.C.G.S. Chapter 25 (1986). UCC sections applicable only under North Carolina law will be cited in reference to Chapter 25 of the North Carolina General Statutes.

the amount of the invoices. The checks were subsequently mailed to GII at the address indicated on the invoices. Johnson, Rawlins, and Moore divided the monies received in this manner.

Knight maintained a checking account at Chase, a New York bank. All the checks but two were drawn on this account; the remaining two were drawn on a Knight account with FUNB, a North Carolina bank.[2]

From 1985 until late 1987, the checks were deposited by Marilyn Mabe (Mabe), bookkeeper for GII, into the company's account at FUNB.[3] The checks were indorsed by Mabe in the following manner:

PAY TO THE ORDER OF
FIRST UNION NATIONAL
CHARLOTTE, NC
FOR DEPOSIT ONLY
GRAPHIC IMAGE, INC.
7048249267

However, on or about 1 July 1987, Conbraco, Inc. (Conbraco), a Charlotte-based company, purchased fifty percent of the stock of GII, leaving Rawlins and Moore each with a twenty-five percent ownership share. The board of directors of the company thereafter expanded to four persons: Rawlins, Moore, and two representatives from Conbraco. Concerned that their fraudulent enterprise might be discovered, Rawlins and Moore instructed Mabe that all checks received from Knight were to be deposited into the account of Graphic Color Prep. (GCP), a film preparation business formed as a partnership in 1985 by Rawlins and Moore and operated on the GII premises.

Beginning in late December 1987, Mabe began depositing the checks received from Knight and payable to "Graphic Image" into the FUNB account of GCP. She indorsed them as follows:

FOR DEPOSIT ONLY
GRAPHIC COLOR PREP.
ACCT. # 7048286557

From January 1988 to May 1992, Mabe deposited approximately fifty-five checks from Knight with a total face amount of $1,479,003.96 into the GCP account.

---

2 Thus, with respect to all the checks but two, Chase acted as the *drawee* bank; FUNB acted as the drawee for the remaining two.

3 FUNB acted as the *depository* bank with regard to all the checks.

After Knight detected the scheme in June 1992, Rawlins, Moore, and Johnson faced criminal charges and received active prison terms upon their guilty pleas. Knight demanded reimbursement from Chase and FUNB, on 19 June 1992 and 17 July 1992 respectively, for the checks paid notwithstanding the allegedly improper indorsements in the name of GCP. When the banks refused, Knight filed the instant lawsuit 30 July 1992.

Knight asserted three causes of action: (1) breach of contract as well as of statutory duty under the UCC against Chase as Knight's drawee bank by charging Knight's account for checks lacking indorsement by the named payee; (2) a parallel claim against FUNB for its role as a depository bank in accepting checks payable to "Graphic Image" but indorsed "Graphic Color Prep.," and depositing them into the latter's account; and (3) breach of contract and of UCC statutory duty against FUNB as Knight's drawee bank regarding the two checks allegedly lacking proper indorsement drawn on Knight's account at FUNB.

After extensive discovery, plaintiff and each defendant filed motions for summary judgment, which were heard during the 29 August 1994 session of the trial court. On 26 October 1994, the court granted summary judgment to Knight against Chase regarding those checks which Knight had notified Chase were improperly paid within three years of the date Chase sent information regarding the checks to Knight through bank statements or other items, see UCC § 4- 406(4); however, the court allowed Chase's motion for summary judgment regarding checks not within the three year cut-off period. Further, the court dismissed Knight's claims against FUNB by allowing the latter's summary judgment motion.

On 9 January 1995, the trial court entered a Final Order and Judgment, setting forth the amount of Chase's liability to Knight. The court ruled Knight was due $1,202,344.84 for the face amounts of the checks in question, in addition to interest on the judgment due at the rate of 8% as provided by N.C.G.S. § 24-1 (1991). Prejudgment interest was established as accruing from 19 June 1992, the date Knight provided notice of improper payment to Chase.

Knight appeals dismissal of its claim against FUNB, but limits its appeal to one check, conceding an action for payment of the second is time-barred under N.C.G.S. § 25-4-406. Moreover, Knight has elected not to appeal dismissal of its cause of action against FUNB as

**KNIGHT PUBLISHING CO. v. CHASE MANHATTAN BANK**

[125 N.C. App. 1 (1997)]

depository bank. Knight also assigns error to the calculation of interest on the judgment at the rate provided by North Carolina law rather than New York law, and to the setting of 19 June 1992 as accrual date for prejudgment interest, asserting the date Knight's account was actually charged for the checks as the proper alternative. Chase appeals summary judgment in favor of Knight on the latter's cause of action against Chase as drawee bank.

Knight's claims against Chase and FUNB as drawee banks are based on UCC § 4-401 under which a bank may charge only "properly payable" items against a customer's account. Knight contends the checks herein were not "properly payable" because they failed to contain the indorsement of the named payee. We agree.

A check drawn to the order of a payee may not be negotiated without indorsement of that payee. *See* UCC § 3-202; *see also* James J. White & Robert S. Summers, *Uniform Commercial Code* § 13-9 at 562 (3d ed. 1988) ("[I]n the case of order instruments, only the payee or one who signs on his behalf can make the first effective indorsement and negotiate the instrument."). This rule results because an instrument payable to order is "negotiated by delivery with any necessary indorsement," UCC § 3-202(1), which "must be written by or on behalf of the holder," UCC § 3-202(2), defined as one "in possession of . . . an instrument . . . drawn, issued, or indorsed to him or to his order . . . ." UCC § 1-201(20).

The checks in this case were payable to the order of "Graphic Image," yet were indorsed "Graphic Color Prep." Nothing else appearing, therefore, the checks were not negotiated, and Chase and FUNB as drawee banks breached their duty under UCC § 4-401 to charge Knight's account only for items "properly payable." *See Tonelli v. Chase Manhattan Bank, N.A.*, 363 N.E.2d 564 (N.Y. 1977) (bank which honors check lacking indorsement of payee will be held liable pursuant to UCC § 4-401).

I.

[1] As defense to Knight's claim, the banks first assert that indorsements in the name of "Graphic Color Prep." were effective under UCC § 3-405, which states:

(1)  An indorsement by any person in the name of a named payee is effective if

. . . .

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

The banks argue that Johnson, an employee of the drawer (Knight), supplied Knight with the name of the payee, "Graphic Image," intending the latter to have no interest in the check.

We do not believe the banks may avail themselves of the defense afforded by UCC § 3-405. The section by its terms is applicable only when the indorsement is "in the name of [the] named payee."

Case law from various jurisdictions has differed regarding the meaning of the above statutory phrase. Some courts have required an exact match between the name of the payee and the indorsement. *See, e.g., Consolidated Public Water Supply v. Farmers Bank*, 686 S.W.2d 844 (Mo. Ct. App. 1985) (one check payable to "Layne Western Co." and another to "Paul Politte, Inc.," yet indorsed, respectively, "Layne Western" and "Paul Politte;" court held "forged endorsements must be exactly the same as the named payees" for UCC § 3-405 to apply); *Seattle-First National Bank v. Pacific National Bank of Washington*, 587 P.2d 617 (Wash. Ct. App. 1978) (payable to "Sumner Motors, Inc.," but indorsed "Sumner Motors;" court ruled requiring indorsement in exact name of payee is "only reasonable standard to apply").

Other courts have considered an indorsement to be "in the name of a named payee" in circumstances involving minor spelling discrepancies between the name of the payee and the indorsement. *See Western Casualty & Surety Company v. Citizens Bank of Las Cruces*, 676 F.2d 1344 (10th Cir. 1982) (payable to "Grater Mesilla Valley Sanitation District," and indorsed "Greater Mesilla Valley Sanitation District;" "minor discrepancy in spelling" does not preclude application of UCC § 3-405); *British Caledonian Airways Limited v. First State Bank of Bedford, Texas*, 819 F.2d 593 (5th Cir. 1987) (payable to "Mary Tull Charter Services," and indorsed "Mary Toll Charter Services;" "discrepancy in spelling the payee's name . . . is a minor one").

Additionally, several commentators have rejected the proposition that UCC § 3-405 requires an exact match. *See, e.g.,* George G. Triantis, *Allocation of Losses from Forged Indorsements on Checks and the Application of § 3-405 of the Uniform Commercial Code*, 39 Okla. L. Rev. 669, 682-83 (1986); James Stuart Bailey, Comment,

**KNIGHT PUBLISHING CO. v. CHASE MANHATTAN BANK**

[125 N.C. App. 1 (1997)]

*Allocation of Loss for Forged Checks Under Articles 3 and 4 of the U.C.C. and the Proposed Revisions Thereto*, 22 Pac. L.J. 1263, 1290 (1991); and Vilia Hayes, Note, *U.C.C. Section 3-405: Of Impostors, Fictitious Payees, and Padded Payrolls*, 47 Fordham L. Review 1083, 1091-93 (1979). One legal writer pointedly criticized the holding in *Seattle-First National Bank*, 587 P.2d 617, with the following observation:

> By requiring an exact correlation between the two names . . . the court failed to recognize that the purpose of the indorsement requirement is to ensure that the check presents a normal appearance. A misspelling or omission of a word, such as "Inc.", that is not essential for identification and would not bar the negotiation of a check with an authorized indorsement should not bar the statute's application.

Hayes, *supra*, at 1093.

In *Witten Productions v. Republic Bank & Trust Co.*, 102 N.C. App. 88, 401 S.E.2d 388 (1991), this Court appears to have followed the foregoing rationale. In *Witten*, eighteen checks delivered to Entertainers of America, Inc., and made payable either to "Republic Nat'l Bank & Ent. of America Escrow Acct." or "Republic Bank and Trust & Ent. of America Escrow Acct." were indorsed "Entertainers." *Id.* at 89, 401 S.E.2d at 389. Two others payable to an unnamed third party were indorsed with a stamp "similar" to the name of the payee. *Id.* We held that "the twenty checks indorsed in some form of the named payee's name" bore effective indorsements under N.C.G.S. § 25-3-405. *Id.* at 91, 401 S.E.2d at 391.

The 1990 revision of Article 3 of the UCC, *see* Uniform Commercial Code, U.L.A. (1991), reinforces the view that UCC § 3-405 does not require an exact match between the payee's name and the indorsement. The amended version of UCC § 3-405, adopted by this state in 1995, *see* 1995 N.C. Sess. Laws ch. 232, § 1, again mandates that indorsement be in the name of the person "to whom the instrument is payable." However, an additional provision explains that

> an indorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not indorsed, is deposited in a depository bank to an account in a name substantially similar to the name of that person.

G.S. § 25-3-405(c) (1995).

In construing a statute with reference to an amendment, it is presumed that legislative intent was either to change the substance of the original statute or to clarify the meaning of it. *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968). Moreover, while it may be logical to conclude that amendment to an unambiguous statute indicates a legislative intent to change the law, no such inference arises from amendment to an ambiguous provision. *Id.* at 260, 162 S.E.2d at 484. The provision of unamended G.S. § 25-3-405 specifying that an indorsement be in "the name of a named payee" may fairly be considered ambiguous, particularly in view of the diversity in cases among jurisdictions interpreting the section. We further note that while the Official Comment to the amended statute explains several specific *changes*, it makes no mention of the addition regarding the similarity required between the named payee and the indorsement. Based on these observations, we consider the phrase "in the name of a named payee" in the unamended statute to be clarified by the amendment, and therefore to require an indorsement not identical to the name of the payee, but rather "substantially similar" to it.

In the case *sub judice*, "Graphic Color Prep." cannot be characterized as "substantially similar" to "Graphic Image." The addition of the words "Color Prep." to "Graphic" signifies that "Graphic Color Prep." is an entity distinct from "Graphic Image." By contrast, the indorsement of "Entertainers" in *Witten* consisted of a subset of the words contained in the name of the payee, either "Republic Nat'l Bank & Ent[ertainers] of American Escrow Acct." or "Republic Bank and Trust & Ent[ertainers] of America Escrow Acct." The checks indorsed in the name of "Graphic Color Prep." rather than "Graphic Image" thus did not "present[] a normal appearance," *Western Casualty*, 676 F.2d at 1346 (citing Hayes, *supra*, at 1093), and application of UCC § 3-405 is precluded.

The banks nonetheless assert that a finding in favor of Knight ignores the loss-causation analysis inherent in UCC § 3-405. The Official Comment to UCC § 3-405 at the time of the instant transactions provided as follows in reference to section (c) on employer liability:

The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or,

if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.

Under the foregoing risk shifting provisions, therefore, it is irrelevant whether an employer is free of fault, *see* 6 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 3-405:13 at 372 (3d ed. 1993), or whether a bank has been negligent in paying a check with an unauthorized indorsement, *see Witten*, 102 N.C. App. at 91-92, 401 S.E.2d at 390-91 and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank*, 442 N.E.2d 1253, 1257 (N.Y. 1982); if the provisions of the statute fit the facts of the case, the statute will operate to absolve the bank of liability to the employer.

The banks maintain, however, that even should the facts not meet the requirements for application of UCC § 3-405, this Court should engage in its own loss causation analysis to determine whether Knight's alleged negligence in failing to prevent the fraudulent scheme should result in the application of the section to bar its claim. We do not agree.

Compliance with the banks' proposal would circumvent the entire purpose of loss allocation statutes such as UCC § 3-405, *i.e.*, the avoidance of analyzing fault on a case by case basis. The drafters of the UCC concluded that UCC § 3-405 should not operate to legitimate fraudulent indorsements which do not "match" (under the "substantially similar" test discussed above) the name of the payee. *See National Credit Union Administration v. Michigan National Bank of Detroit*, 771 F.2d 154, 160 (6th Cir. 1985) ("The requirement of an indorsement 'in the name of a named payee' is meant to *prevent a shift of liability* from the drawee to the drawer when the drawee negligently pays an instrument that does not bear a purportedly regular chain of indorsements." (emphasis added)). Courts should not change express provisions of the UCC by judicial construction, *see* Anderson, *supra*, § 3-405:6 at 366, and we decline to do so.

Moreover, *Perini Corporation v. First National Bank of Habersham County*, 553 F.2d 398, *reh'g denied*, 557 F.2d 823 (5th Cir. 1977), and *National Credit Union Administration*, 771 F.2d 154 (6th Cir. 1985), two cases cited by the banks for the loss causation analysis utilized therein, are inapposite. Each is a *double* forgery case wherein the signatures of both the payee *and* the drawer were forged. The *Perini* court determined forgery of the *drawer's* signature to be

the primary cause of loss in such a case; thus, the drawee bank alone should bear liability rather than be permitted to shift the loss to a collecting or depository bank for breach of warranty of good title under UCC § 4-207(1)(a).

It must be pointed out, however, that *Perini* specifically limited its holding (which allowed missing or incomplete indorsements to be ignored) to cases also involving the forged signature of a drawer. 553 F.2d at 412 and 414; *see also National Credit Union Administration*, 771 F.2d at 159, FN 2. In the present case, Knight's signature as drawer was not forged. Moreover, even under the loss causation analysis set out in *Perini*, the negligent employer would not ultimately bear the loss—rather it would be borne by the drawee bank.[4]

The trial court's order of summary judgment in favor of FUNB indicated the court perceived our holding in *Witten* to require determination that FUNB was protected by operation of G.S. § 25-3-405. Having earlier distinguished between the indorsements at issue in *Witten* and those herein, we reverse the trial court's ruling as to FUNB based on the preceding analysis.

[2] Chase additionally argues the trial court erred in applying New York law rather than North Carolina law to the issue of application of UCC § 3-405 to Knight's claim against Chase. Presumably, this argument loses its "appeal" upon our ruling, using North Carolina law, that the section has no applicability in this case.

In any event, the trial court properly elected to apply New York law. The UCC states in pertinent part:

> The liability of a bank for action or non-action with respect to any item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank is located.

UCC § 4-102(2). Chase is located in New York. Therefore, New York law governs whether UCC § 3-405 may be applied to protect Chase.

Our examination of New York law reveals it to be at least as restrictive as our own in its application of UCC § 3-405. For example, in *Kosic v. Marine Midland Bank*, 430 N.Y.S.2d 175 (N.Y. App. Div.

---

4 The employers in *Perini* and *National Credit Union Administration* were respectively held liable simply because the former had agreed to hold the drawee blameless for losses due to fraudulent use of its facsimile signature machine, 553 F.2d at 400, and the latter had failed to bring the issue of drawee liability before the trial court, 771 F.2d at 161.

1980), *aff'd*, 446 N.Y.S.2d 264 (N.Y. 1981), the court cited *Seattle-First* (which required a mirror-image indorsement) when describing the indorsement therein as not "in the name of [the] named payee." 430 N.Y.S.2d at 179.

Moreover, the New York authority cited by Chase is unavailing. In *Prudential-Bache Securities, Inc. v. Citibank, N.A.*, 4 U.C.C. Rep. Serv. 2d 533 (N.Y. Sup. Ct. 1987), *aff'd*, 529 N.Y.S.2d 983 (N.Y. App. Div. 1988), *modified and aff'd*, 539 N.Y.S.2d 699 (N.Y. 1989), and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank*, 442 N.E.2d 1253 (N.Y. 1982), the indorsements in question were actually in the names of the payees. In *Hartford Accident & Indemnity Co. v. American Express Company*, 518 N.Y.S.2d 93 (N.Y. Sup. Ct. 1987), *aff'd*, 533 N.Y.S.2d 356 (N.Y. App. Div. 1988), *aff'd*, 542 N.E.2d 1090 (N.Y. 1989), the issue of a match between indorsement and payee was not raised.

Only *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NCNB Nat. Bank of N.C.*, 695 F. Supp. 162 (S.D.N.Y. 1988), *aff'd*, 872 F.2d 1021 (2d Cir. 1989), is on point and it provides no support for Chase. *Merrill Lynch* involved a check payable to "Empire Paper & Envelope Co." and indorsed "Empire Paper & Envelope Co., Div. of Burke, Wainwright & Evans, Inc." Plaintiff drawer argued the addition of "Div. of Burke, Wainwright & Evans, Inc." rendered the indorsement ineffective under UCC § 3-405. The court ruled

> there was an *indorsement of the complete name of the named payee* and that the addition to it of a description of the payee is insufficient to preclude the application of § 3-405.

*Id.* at 164 (emphasis added and emphasis in original omitted). In the present case, the indorsements at issue were not in "the complete name of the named payee," *id.*

[3] The last argument of Chase as concerns UCC § 3-405 is that the trial court erred by holding Chase liable as drawee while absolving FUNB, the depository bank. A drawee bank held liable for improperly charging its customer's account in violation of UCC § 4-401 may normally look to the depository bank for reimbursement under the theory that the latter breached its warranty of good title under UCC § 4-207(1)(a). *See* White & Summers, *supra*, § 15-9 (banks "upstream" warrant when passing a check to a payor bank that they have "good title" to the check, *i.e.*, that the check bears no forged indorsements); *cf. Smith Barney, Harris Upham & Co., Incorporated v. Citibank*

*(Delaware)*, 556 N.Y.S.2d 61, 63 (N.Y. App. Div. 1990) (while drawee bank may look to depository bank as guarantor of missing indorsement, its liability to customer is primary). However, the record reflects no claim by Chase in the instant action for indemnification against FUNB. Further, Knight declined to appeal the trial court's dismissal of its cause of action against FUNB as depository bank, and that issue thus is not before us. Finally, we note with interest in the context of this argument the revelation by Chase (albeit improperly, since not contained in the record) in its appellate brief of an agreement by FUNB to indemnify Chase for judgments entered against it in favor of Knight. *See Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890 (1979) (statements of fact in a brief may be assumed as true as against party asserting them).

In conclusion, under North Carolina and New York law respectively, neither FUNB nor Chase may use UCC § 3-405 to deny liability to Knight for improperly charging its account. We observe such a result is more satisfactory than that reached below which held Chase, but not FUNB, liable on the same facts. As provided within the UCC itself, the purpose thereof is "to make uniform the law among the various jurisdictions." UCC § 1-102(2)(c).

## II.

**[4]** The banks next maintain Mabe's indorsement of the checks was effective because GCP (as indorser) was an agent of GII (the payee). We reject this contention.

UCC § 3-403(1) provides that "[a] signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation." However, case law indicates that an agent's alleged authority to indorse checks is not at issue unless the payee's indorsement is affixed. *See Kosic*, 430 N.Y.S.2d at 178-79 (embezzling party "never affixed the indorsement of the payee or purported to do so and the extent of her unexercised authority to do so is irrelevant"); *Mid-Atlantic Tennis Courts v. Citizens Bank & Trust Co.*, 658 F. Supp. 140, 143 (D. Md. 1987) ("question of whether the payee's signature was authorized or not arises only when there is a signature in the first place").

Moreover, in order for an agency relationship to be created, a principal must actually consent to an agent's acting on its behalf. Harold Gill Reuschlein & William A. Gregory, *The Law of Agency and Partnership* § 14 at 34 (2d ed. 1990). It is undisputed that the board

of directors of GII, at no time during which the improper indorsements were affixed, authorized any person to indorse or deposit GII checks on behalf of GCP. Indeed, the uncontradicted affidavit of a Conbraco representative who sat on the GII board during the relevant time period establishes that he was totally unaware of the existence of GCP.

In the main, the banks claim they are relying upon the principle of *apparent* agency. An apparent agency is created where "a person by words or conduct represents or permits it to be represented that another person is his agent" when no actual agency exists. *Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 278, 357 S.E.2d 394, 397, *disc. review denied*, 320 N.C. 631, 360 S.E.2d 87 (1987). The banks point to evidence that in August 1986 Moore applied for a checking account in GCP's name and assured Sherrye Banker (Banker), an employee of FUNB, that GCP was a subsidiary of GII and that "it would be okay for the bank to transact business, one on behalf of the other."

However, apparent authority may not be relied upon to assert that a principal authorized a certain transaction between its purported agent and a third party unless the third party *actually relied* upon the assertions of the principal regarding the purported agent's power at the time of the transaction. 3 Am. Jur. 2d *Agency* § 80 (1986); *see also Hayman*, 86 N.C. App. at 278-79, 357 S.E.2d at 397-398. Absolutely nothing in the record indicates that any bank employee processing the checks made inquiry into GCP's authority to indorse checks payable to "Graphic Image" and deposit them into GCP's account. Nor is there evidence that any bank employee, when processing the checks notwithstanding lack of GII's indorsement, was aware of or relied upon Moore's alleged assurances to Banker.

The sole record instance of a teller calling into question the GCP indorsement works against the banks' argument. On that occasion, a FUNB teller allegedly alerted a supervisory employee that a check payable to "Graphic Image" was stamped with an indorsement in the name of GCP. The supervisor testified he then affixed the words "Graphic Image, Inc." by hand on the back of the check because he thought it was "more acceptable . . . at least to have Graphic Image's name on the back made out like the payee was." Completely absent from the record is any evidence the supervisor made inquiry into GCP's authority to indorse checks payable to "Graphic Image" before he supplied the missing indorsement.

Finally, the banks' reliance on the cases of *McIsaac v. Bank of New York*, 425 N.Y.S.2d 678 (N.Y. App. Div. 1980) and *Campbell v. Bank of America National Trust and Savings Association*, 235 Cal. Rptr. 906 (Cal. Ct. App. 1987) to support their agency theory is unavailing.

In *McIsaac*, the payee corporation and the indorsing corporation were "virtually one entity" and this fact was "known to the plaintiff." 425 N.Y.S.2d at 679. The court concluded that the entity intended to receive the proceeds of the check was that which in actuality received them, and therefore the drawer was precluded from recovering on an improperly paid check. *Id.* GII and GCP herein, however, were clearly separate entities, and GII was not the actual recipient of the proceeds of the checks payable to "Graphic Image."

In *Campbell*, the payee corporation had actually authorized the indorsement of its checks by a second corporation. 235 Cal. Rptr. at 911. Both corporations were family held companies with the same chief executive officer and majority shareholder. *Id.* at 907-8. The court stated that

> once the plaintiff has proven that the Bank (as payor bank) paid funds to someone other than the named payee, the Bank carries the burden of proving that the indorsement by a third party and the payment of the funds to a third party was authorized by the named payee.

*Id.* at 911. In the case *sub judice*, the banks failed to show GII authorized indorsement of its checks by, or payment of the proceeds thereof to, any other entity, including GCP. Indeed, GCP was being used by the embezzlers to conceal receipt of funds from the other shareholders of GII.

### III.

[5] Chase advances the further argument that Knight is precluded from bringing suit on the improper indorsements because the "Account Conditions" governing Chase's relationship with Knight imposed a 180-day limitation on the period within which a customer might bring a claim against the bank. This argument is unfounded.

The provision relied upon by Chase reads as follows:

> [C]laims against us must be made as soon as possible but no later than 180 days after the date of the statement on which the transaction is referred to.

**KNIGHT PUBLISHING CO. v. CHASE MANHATTAN BANK**

[125 N.C. App. 1 (1997)]

UCC § 4-406 delineates a customer's duty to examine statements and cancelled checks received from a bank and to report discovery of the customer's "unauthorized signature or any alternation" of the checks to the bank. UCC § 4-406(1). Such irregularities are to be reported "promptly" and the customer will be considered to have acted with reasonable promptness if it responds to the bank within 60 days following receipt of the bank statements. *Id.* If it fails to provide prompt notification to the bank, the customer is precluded in certain situations under UCC § 4-406(2) from asserting that the bank improperly paid the checks. However, the preclusions set out in UCC § 4-406(2) do not apply if the bank has failed to exercise ordinary care in paying the checks. UCC § 4-406(3). Regardless of the lack of care of either the customer or the bank in discovering errors, the statute imposes a one-year limitations period for discovering and reporting the forgery of the customer's own signature or any alteration of the check. UCC § 4-406(4). In addition, a *three-year* period is permitted within which to discover and report unauthorized *indorsements*.[5] UCC § 4-406(4).

By provision in its "Account Conditions," Chase has attempted to shorten to 180 days the three-year limitations period contained in UCC § 4-406(4) for discovering and reporting unauthorized indorsements. As authority to do so, Chase relies on UCC § 4-103(1), which provides the following:

The effect of the provisions of this article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure[.]

Relying on case law from New York, *see* UCC § 4-102(2), we hold Chase may not utilize the shortened limitations period contained in its "Acount Conditions" to deny Knight's claim, because Chase as a matter of law failed to exercise "ordinary care" in paying checks which lacked effective indorsements.

In *Murray Walter, Inc. v. Marine Midland Bank*, 480 N.Y.S.2d 631 (N.Y. App. Div. 1984), a check payable to "Johnson Electric and G.E.

---

5 The Official Comments to UCC § 4-406 explain that the longer period for reporting unauthorized indorsements "recognizes that there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature. However, he does not know the signatures of indorsers and may be delayed in learning that indorsements are forged."

Supply" was indorsed solely by Johnson Electric, yet was processed by defendant drawee bank. Upon suit, defendant asserted that its customer had failed "to promptly bring the irregularity to its attention." *Id.* at 632. The court responded:

> Defendant's attempt to invoke the provisions of section 4-406 of the Uniform Commercial Code as a defense is unavailing since that section pertains to a customer's obligation to detect a forgery of his own signature, or other alteration, and does not extend to an instance of a missing indorsement. . . . Moreover even if section 4-406 were deemed applicable, it is obvious that defendant acted without ordinary care in honoring plaintiff's check with a missing indorsement.

(citations omitted).

In *Smith Barney*, 556 N.Y.S.2d 61, 63 (N.Y. App. Div. 1990), an employee embezzlement case with facts similar to those herein, the court held:

> While it is true that a depositor is under a duty to examine statements and cancelled checks to discover irregularities in the account and notify the bank, where a payee's indorsement is entirely missing rather than forged [check in this case payable to "Telaid Industries, Inc." and indorsed "A.C.D. Communications Systems, Inc."], a bank that pays such an instrument cannot avoid liability on the basis of the drawer's subsequent failure to discover the irregularity.

(citation omitted).

A close reading of the above cases suggests the defendant banks were asserting preclusion of the plaintiffs' claims under UCC § 4-406(2), and that the courts were responding that the preclusion was inapplicable because of the banks' lack of ordinary care under UCC § 4-406(3) in paying the items at issue. Although Chase herein is attempting abbreviation of the limitations period set out in UCC § 4-406(4) rather than UCC § 4-406(2), we believe the analyses above by the New York courts regarding the banks' lack of ordinary care under UCC § 4-406(3) is relevant *sub judice*, since the limitations period of UCC § 4-406(4) may not be shortened if the effect is to "disclaim a bank's responsibility for its own . . . failure to exercise ordinary care," UCC § 4-103(1).

*Retail Shoe Health Commission v. Manufacturers Hanover Trust Company*, 558 N.Y.S.2d 949 (N.Y. App. Div. 1990), a case cited

by Chase in which the court allowed a payor bank to rely on a contractual six-month limitations period for reporting forged indorsements, is inapposite. The indorsements therein were forged in the names of the payees and therefore were not "missing" as in the present case and those cited above.

We also note that although the precise contractual terms at issue in *Retail Shoe* were not specified in the opinion, it appears they specifically addressed the customer's duty to report errors in *indorsements*. *Id.* at 951. By contrast, the "Account Conditions" asserted by Chase herein set forth no such specifications. *Cf.* White & Summers, *supra*, at § 16-3 (under UCC § 4-406, customer not responsible for checking indorsements).

In conclusion, Chase may not rely on the limitations period set forth in its "Account Conditions" to bar Knight's claim based on Chase's payment of checks lacking the indorsement of the named payee.

## IV.

[6] Lastly, the banks assert as a defense that Knight is barred from bringing a claim against them under UCC § 3-406, which provides:

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

The banks insist "Knight Publishing's negligence creates material questions of fact" precluding entry of summary judgment in favor of Knight. However, their appellate brief contains no argument and no citation of authority directed at the propriety of applying the complex provisions of UCC § 3-406 to bar Knight's claim. Accordingly, we decline to discuss this question. *See* N.C.R. App. P. 28(b)(5) ("Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

## V.

[7] Prior to conclusion, we consider Knight's appeal. Knight first claims the court erred by charging Chase at the interest rate estab-

lished by North Carolina law, *see* G.S. § 24-1, rather than New York law, *see* N.Y. Civ. Prac. L. & R. 5004 (McKinney 1992). We agree.

As previously noted, under the UCC the substantive law of New York applies to Knight's claim against Chase. *See* UCC § 4-102(2). Further, determination of interest on a judgment is a matter of substantive law. *See Tennessee Carolina Transportation, Inc. v. Strick Corporation*, 283 N.C. 423, 440, 196 S.E.2d 711, 722 (1973). Therefore, New York law governed the award of interest on the sum due from Chase to Knight, and the trial court erred in holding that North Carolina law was applicable.

**[8]** Knight also assigns error to the calculation of prejudgment interest from the date Knight notified Chase of its improper payments as opposed to the date Chase actually charged Knight's account for the checks in question. The trial court did not err in this regard.

New York law provides: "Interest shall be computed from the earliest ascertainable date the cause of action existed . . . ." N.Y. Civ. Prac. L. & R. 5001 (McKinney 1992). In *American Building Main Co. of Cal. v. Federation B&T Co.*, 213 F.Supp. 412 (S.D.N.Y. 1963), plaintiff sued defendant bank to recredit its account for payments over forged indorsements. The court observed it is "undoubtedly the general rule" that "there is no breach of a contract between a bank and a depositor until the bank has refused a demand." *Id.* at 419. Moreover, "where a bank has rendered statements showing payments on checks bearing forged indorsements, further demand is necessary 'to entitle a person to maintain an action.' " *Id.* at 420. Under New York law then in effect requiring interest on an award arising out of a breach of contract to be paid "from the date of the breach," the court held the plaintiff was entitled to prejudgment interest only from the date it had notified the bank of its error. *Id.* at 419-20.

We conclude interest did not begin to accrue under New York law until Knight demanded repayment, since its cause of action against Chase could not be maintained until Knight made such demand. *Accord Aetna Casualty & Surety Co. v. Trader's National Bank & Trust Co.*, 514 S.W.2d 860, 867 (Mo. Ct. App. 1974) ("Fairness calls for interest to begin only after [bank] was notified that it owed some money and after it had opportunity to comply with that legal obligation.").

Knight cites *Zambia National Bank v. Fidelity International Bank*, 855 F. Supp. 1377 (S.D.N.Y. 1994), containing dicta to the ef-

**KNIGHT PUBLISHING CO. v. CHASE MANHATTAN BANK**

[125 N.C. App. 1 (1997)]

fect that interest under N.Y. Civ. Prac. L. & R. 5001 on a similar UCC § 4-401 claim would accrue from the date the bank improperly charged its customer's account. However, the accrual date of prejudgment interest was not at issue in *Zambia*, and we do not consider the passing dicta therein to override the more detailed holding of the court in *American Building*.

In sum, we uphold the trial court's decision that Chase was liable to Knight as a matter of law under UCC § 4-401 in consequence of charging Knight's account for checks not "properly payable." Further, we hold FUNB was similarly liable to Knight for the single check presented on appeal upon which FUNB acted as drawee. In addition, we conclude the banks' various asserted UCC defenses to Knight's claim either fail as a matter of law or were not properly presented upon appeal. Summary judgment entered in favor of Knight against Chase is therefore affirmed, but the grant of summary judgment to FUNB is reversed and this matter remanded for entry of summary judgment in favor of Knight against FUNB.

With regard to interest due on Knight's judgment against Chase, we hold New York law applies and that the trial court erred in assessing interest at the rate set by North Carolina law. That portion of the trial court's interest award is therefore reversed, and we remand for an award of interest on Knight's judgment against Chase at the rate provided under New York law. The trial court's determination that prejudgment interest began to accrue from the date Knight notified Chase its account was wrongfully charged is affirmed.

Affirmed in part; reversed and remanded in part.

Judges JOHNSON and SMITH concur.

Judge Johnson participated in this opinion prior to his retirement on 1 December 1996.