(35 P.3d 931)

No. 86,028

ALG, INC. d/b/a AVIATION LEASING GROUP, a Missouri Corpora-
tion; BUFFALO AIRWAYS, INC., ALG TRANSPORTATION, INC.,
and LCA PARTNERS, *Appellants*, v. ESTATE OF WILLIAM R.
ELDRED, RANDALL L. MARSHALL, and BOATMEN'S FIRST
NATIONAL BANK OF KANSAS CITY, *Appellees*.

Opinion filed
November 30, 2001.

*Thomas A. Hamill* and *B. Scott Tschudy*, of Martin, Pringle, Oliver, Wallace &
Swartz, L.L.P., of Overland Park, for appellants.

*W. James Foland* and *Jack W. Green, Jr.*, of Foland & Wickens, P.C., of Kansas
City, Missouri, for appellees.

Before ELLIOTT, P.J., JOHNSON, J., and BRAZIL, S.J.

ELLIOTT, J.: In this case we must determine when a check is "properly payable" as that term is defined in Mo. Rev. Stat. § 400.4-401 (2000) (revised Uniform Commercial Code [UCC] § 4-401).

The checks at issue in this appeal were deposited in Missouri. Thus, substantive Missouri law applies. UCC. § 4-102(b) (K.S.A. 84-4-102[b], Mo. Rev. Stat. § 400.4-102[b] [2000]).

We affirm the trial court's judgment.

This case was brought pursuant to the revised articles 3 and 4 of the UCC as adopted in Missouri. All UCC citations may be found in chapter 400 of the revised Missouri statutes, as well as chapter 84 of K.S.A. Throughout this opinion sections of the Code will be referred to by the UCC designation instead of the chapter 400 or chapter 84 designation.

The facts relevant to our decision are undisputed. Plaintiffs Buffalo Airways (Buffalo) and ALG, Inc. (ALG) employed defendants Rick Eldred and Randy Marshall between 1994 and 1996. During that time period, Eldred and Marshall embezzled over $800,000 of funds from the four plaintiffs who had common ownership. Buffalo held an account at defendant Boatmen's First National Bank of Kansas City (Boatmen's).

The embezzlement worked as follows: In August 1995, Eldred and Marshall opened a bank account at Boatmen's in the name of a fictitious company, United Aviation Services, Inc. (United Aviation), where they deposited the embezzled funds.

In total there are 138 embezzled checks. Of these, 25 checks were drawn on the account Buffalo held at Boatmen's and deposited in the account United Aviation held at Boatmen's in the amount of $167,387.27. The remaining 113 checks were not drawn on an account at Boatmen's but were deposited in the account United Aviation held at Boatmen's in the amount of $494,293.08. Most, if not all, of the 138 checks were made payable to someone other than United Aviation. All checks were deposited in a Boatmen's branch located in Kansas City, Missouri.

Plaintiffs sued all three defendants under various theories of liability. Only one claim comes before this court—a claim of negligence asserted by all plaintiffs against Boatmen's. The petition alleged that Boatmen's was negligent because it accepted these

checks "even though they were not properly payable in that they contained either fraudulent or missing endorsements" and Boatmen's "failed to exercise ordinary care in accepting these checks for value or for collection and in paying these checks."

On the negligence claim the jury awarded ALG $28,025.25 and Buffalo $79,800 in damages. The jury did not award the other two plaintiffs any damages. Applying comparative fault principles, the jury found the plaintiffs to be 95% at fault, so plaintiffs' judgment was reduced to a total of $5,391.26.

On appeal, plaintiffs contend that the district court erred in denying their motions for summary judgment and to alter or amend the judgment or, in the alternative, a new trial (the motions).

The issue on appeal is whether the district court erred in denying the motions. Resolution of this issue turns solely on whether the district court properly interpreted various portions of the revised articles 3 and 4 of the UCC. This is a question of law over which we have unlimited review. See *King v. White*, 265 Kan. 627, 632, 962 P.2d 475 (1998).

The plaintiffs argued in the motions that none of the 138 checks was properly payable as a matter of law as that term is defined in UCC § 4-401 because the endorsements were not "effective endorsements" as that term is defined in the UCC § 3-405. They continue this argument on appeal.

UCC § 4-401 is in part 4 of article 4 of the UCC entitled "Relationship Between Payor Bank and its Customer." UCC § 4-401 reads in relevant part:

"4-401. When bank may charge customer's account (a) A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank."

By their legal argument as set out above, plaintiffs have abandoned all claims the district court erred in denying their motions with respect to the 113 checks. A "depository bank" is the "first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter." UCC § 4-105(2). A "payor bank" is the "bank that is the drawee

of a draft." UCC § 4-105(3). The "payor bank" is also referred to as the "drawee bank." In this case, Boatmen's was the depository bank, not the payor bank on all of the 113 checks. Plaintiffs were not in a customer-payor bank relationship with Boatmen's with respect to those 113 checks.

UCC § 4-401 sets no standard of care for depository banks. Rather, it sets the standard of care the payor/drawee bank owes its customer. Plaintiffs conceded this point at oral argument but ask this court to extend the principles of UCC § 4-401 to depository banks. This we cannot do for it would involve judicial rewriting of the UCC. See *Knight Pub. v. Chase Manhattan Bank*, 125 N.C. App. 1, 11, 479 S.E.2d 478 (1997) ("Courts should not change express provisions of the UCC by judicial construction.").

The liability of a depository bank in accepting for deposit checks having missing or forged endorsements is adequately covered by the UCC. See, *e.g.*, UCC § 3-307(b)(2)(iii) (the taker of an instrument has notice of breach of fiduciary duty if the instrument is deposited to an account other than an account of the fiduciary); UCC § 3-306 (one who is not a holder in due course who takes an instrument or its proceeds is subject to a claim of a property or possessory right in the instrument or its proceeds); UCC § 3-316 (breach of warranty of previous endorsements); *Williams v. Liberty Bank & Trust Co.*, 746 So. 2d 275, 279-80 (La. 1999) (depository bank liable for conversion when it accepted for deposit checks with fraudulent endorsements, citing revised UCC §§ 3-206, 3-420); *Dalton & Marberry, P.C. v. NationsBank*, 982 S.W.2d 231, 237 (Mo. 1998) (allowing negligence claim against depository bank who took instruments for collection and payment when bank was not a holder in due course); see also *Leeds v. Chase Manhattan Bank*, 331 N.J. Super. 416, 422-23, 752 A.2d 332 ( 2000) (depository bank strictly liable in conversion by paying on check and forged endorsement, citing revised UCC § 3-420 and UCC § 4-105).

The district court did not err in denying plaintiffs' motions with respect to these 113 checks.

We now turn to the remaining 25 checks on which Boatmen's was the payor bank. Plaintiffs argue they are not "properly payable" because none of the endorsements was an "effective endorsement"

as that term is defined in UCC § 3-405. We find this argument unavailing.

UCC § 3-405(b) and (c) state:

"(b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee *makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person.* If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

"(c) Under subsection (b), *an endorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not endorsed, is deposited in a depository bank to an account in a name substantially similar to the name of that person.*" (Emphasis added.)

Plaintiffs rely on *Knight Publishing* to support their proposition that the district court must determine as a matter of law whether an endorsement is effective as that term is defined in UCC § 3-405 to determine whether the check is properly payable pursuant to UCC § 4-401.

We read *Knight Publishing* differently. In that case, the North Carolina Court of Appeals held, applying prerevised UCC articles 3 and 4, that the checks at issue were not "properly payable" because they failed to contain the endorsement of the named payee. 125 N.C. App. at 7. The lack of the payee's endorsement rendered the checks not "properly payable" because

"[a] check drawn to the order of a payee may not be negotiated without indorsement of that payee. See UCC § 3-202; see also James J. White & Robert S. Summers, Uniform Commercial Code 13-9 at 562 (3d ed. 1988) ('[I]n the case of order instruments, only the payee or one who signs on his behalf can make the first effective indorsement and negotiate the instrument.'). This rule results because an instrument payable to order is 'negotiated by delivery with any necessary indorsement,' UCC § 3-202(1), which 'must be written by or on behalf of the holder,' UCC § 3-202(2), defined as one 'in possession of . . . an instrument . . . drawn, issued, or indorsed to him or to his order . . . .' UCC § 1-201(20).

"The checks in this case were payable to the order of 'Graphic Image,' yet were indorsed 'Graphic Color Prep.' Nothing else appearing, therefore, the checks were not negotiated, and [the] drawee banks breached their duty under UCC § 4-401 to charge Knight's account only for items 'properly payable.' See *Tonelli v. Chase Manhattan Bank, N.A.*, 41 N.Y.2d 667, 394 N.Y.S.2d 858, 363 N.E.2d 564 (1977) (bank which honors check lacking indorsement of payee will be held liable pursuant to UCC § 4-401)." *Knight*, 125 N.C. App. at 7.

The *Knight* opinion discussed the applicability of certain defenses available to the bank, including revised UCC § 3-405. That court's discussion of possible defenses to a claim the checks were not properly payable did not state the checks were not properly payable because the endorsements were not "effective."

Acceptance of the plaintiffs' legal theory would lead to an irreconcilable inconsistency in the UCC. Five of the 25 checks at issue here were fraudulently endorsed in the name of the payee. An item containing a forged endorsement is not properly payable. UCC Official Comment to § 4-401.

If, however, we were to adopt plaintiffs' legal theory and define "properly payable" by reference to UCC § 3-405, these five checks would be properly payable. Pursuant to UCC § 3-405(b), a fraudulent endorsement is "effective" if made in the name of the payee, as that term is defined in UCC § 3-405(c). With respect to these five checks, the endorsements were effective because they were in the exact name of the payee.

Thus, an item bearing a forged endorsement in the name of the payee would be "effective" pursuant to UCC § 3-405(b) and (c), yet not properly payable pursuant to UCC § 4-401. If the plaintiffs' argument that instruments bearing "effective" endorsements pursuant to UCC § 3-405(b) and (c) are properly payable pursuant to UCC § 4-401 is correct, an irreconcilable conflict within the Code results.

" ' "In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia*." [Citation omitted.]' " *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 644, 941 P.2d 1321 (1997).

" ' "In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible."[Citation omitted.]' " 262 Kan. at 643-44.

We choose to avoid the conflict urged by the plaintiffs and instead choose to read UCC §§ 3-405 and 4-401 in a "consistent, harmonious, and sensible" manner. We conclude the definition contained in UCC § 3-405(b) and (c) of an "effective endorsement" is only applicable in determining whether the defense contained in UCC § 3-405 is available to the bank. The definition of an "effective" endorsement in UCC § 3-405(b) and (c) has no bearing on whether the item is "properly payable" pursuant to UCC § 4-401.

The phrase "properly payable" was effectively undefined in the prerevised UCC §4-401. *Govani & Sons Const. v. Mechanics Bank*, 51 Mass. App. 35, 40, 742 N.E.2d 1094 (2001). Thus, courts found it appropriate to find the definition "properly payable" by reference to the common law. 51 Mass. App. at 40-41. *Govani* then went on to note and apply the common-law definition of properly payable to checks that were factually similar to 16 of the 25 checks at issue here (checks made payable to Boatmen's on Buffalo's account and deposited into the United Aviation account without endorsement). 51 Mass. App. at 40-41 (citing *Dalton & Marberry, P.C. v. NationsBank, N.A.*, 982 S.W.2d 231, 234 n.2 [Mo. 1998]).

Unlike the old UCC, revised UCC § 4-401 does define when a check is properly payable. UCC § 4-401(a) now states: "An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and its bank." Thus, in order to determine if a check is properly payable, "reference must first be made to the agreement establishing the account between the customer and the bank," and then "the customer must have, expressly or implicitly, authorized the payment." 7 Anderson on the Uniform Commercial Code, Rev. § 4-401:5 (3d ed. 2000).

We believe this to be the proper definition of a properly payable item. When the legislature revises an existing statute, we presume

the legislature intended to change the law existing prior to the amendment. See *State v. Spain*, 263 Kan. 708, 711, 953 P.2d 1004 (1998).

We need not analyze whether the 25 checks were properly payable as that term is defined by revised UCC § 4-401(a). It is enough for us to note the plaintiffs have not urged this legal theory on appeal.

On appeal, a party may not assert a new legal theory. *Cashman v. Cherry*, 270 Kan. 295, 298, 13 P.3d 1265 (2000).

Affirmed.