746 So.2d 275 (1999)
Brenda WILLIAMS, formerly Brenda Mayfield
v.
LIBERTY BANK & TRUST COMPANY, Alden McDonald and Calvin Kaufman.
No. 98-CA-3008.
Court of Appeal of Louisiana, Fourth Circuit.
November 3, 1999.
Rehearing Denied December 16, 1999.
*276 Joseph W. Thomas, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Pamela W. Carter, LeBlanc, Miranda & Delaup, Metairie, Louisiana, Counsel for Defendants/Appellants.
Court composed of Judge MOON LANDRIEU, Judge MICHAEL E. KIRBY, Judge ROBERT A. KATZ.
KIRBY, Judge.
Defendant, Liberty Bank and Trust Company (Liberty Bank), appeals the trial court judgment granting plaintiff's motion for judgment notwithstanding the verdict (JNOV) and rendering judgment in favor of plaintiff, Brenda Williams, in the amount of $106,190.84, with interest from date of judicial demand plus costs.
Plaintiff filed suit against Liberty Bank and two of its officers, claiming that defendants were liable to her for the amounts listed on two checks issued to her by Allstate Insurance Company. These two checks, in the amounts of $96,080.14 and $10,113.70, were issued to plaintiff in settlement of a claim of past due child support owed to her late daughter by her late daughter's former husband. The $96,080.14 check was paid to the order of "Brenda Mayfield"[1] and the $10,113.70 check was paid to the order of "Brenda Mayfield as Administrator for the Estate of Tangie Thompson."
*277 Plaintiffs nephew, Blake Williams, acted as attorney for the succession of Tangie Thompson. The Allstate checks, payable to plaintiff only, were mailed to Blake Williams' office. It is undisputed that on the back of these two checks, Blake Williams signed plaintiffs name and wrote "For deposit only" underneath her name. No other handwritten words or numbers appear on the back of these checks. The checks were deposited into Blake Williams' client trust account at Liberty Bank on April 28, 1995. Plaintiff claims that Blake Williams' signing of her name to the backs of the checks was unauthorized and constituted forgery. Liberty Bank's position is that plaintiff authorized Blake Williams to endorse her name on the back of the checks. According to the bank, Blake Williams was required to deposit these funds into his client trust account at Liberty Bank. At the time these checks were deposited by Blake Williams, plaintiff did not have an account at Liberty Bank.
Plaintiff admits that she received amounts from Blake Williams totaling approximately $11,000.00 in the period after the settlement checks were deposited at Liberty Bank, but she did not know the source of those funds. However, Liberty Bank argues that the trial testimony established that the funds advanced to plaintiff by Blake Williams came from his client trust account. We agree with plaintiff that because the settlement funds were commingled in the client trust account with funds from other sources, there is no way to prove that the funds advanced to plaintiff (whether loaned or given) were from the settlement funds or other sources. In any event, plaintiff claims that Liberty Bank is liable to her for the amount of the settlement checks because it negotiated the checks with unauthorized endorsements. It is undisputed that the funds in question are no longer in Blake Williams' account at Liberty Bank.
After plaintiff filed an affidavit of forgery, Allstate's bank sent a letter to Liberty Bank requesting reimbursement for the check to plaintiff in the amount of $10,113.70, which was returned to them by plaintiff for an alleged forged endorsement. Liberty Bank responded to that letter, stating that it was denying the reimbursement request because Blake Williams was acting under a power of attorney from plaintiff when he negotiated the settlement checks. The letter from Liberty Bank stated that the power of attorney was attached to the letter; however, the letter was introduced into evidence but the power of attorney was not. Furthermore, Liberty Bank Vice President Calvin Kaufmann testified that Blake Williams did not have the power of attorney with him when he presented the settlement checks at Liberty Bank. He said that he called Blake Williams when he received plaintiffs affidavits of forgery and Williams mailed the power of attorney to the bank after that telephone conversation.
Following trial, the jury was presented with two interrogatories:
1) Do you find that the endorsements were unauthorized, therefore rendering the defendants liable to Brenda Williams for conversion?
2) Do you find that the checks were not deposited consistent with the endorsements, therefore rendering the defendants liable to Brenda Williams for conversion?
The jury responded negatively to both interrogatories. Judgment was then rendered in favor of Liberty Bank and Calvin Kaufman, a bank Vice President, and against plaintiff pursuant to the jury's verdict.[2]
Plaintiff subsequently filed a motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for new trial. The trial judge granted plaintiffs motion *278 for JNOV only as to Liberty Bank. Additionally, the trial judge conditionally granted the plaintiff's motion for new trial only as to Liberty Bank. Liberty Bank now appeals. In granting the JNOV, the trial judge stated in oral reasons that "[t]he Court is not substituting it's[sic] opinion, the Court is looking at the law. The law states where there is an unauthorized signature it's considered to be a forgery, and where there is an unauthorized signature and the bank pays on an unauthorized signature, then the Bank is liable."
On appeal, Liberty Bank argues that the trial judge erred in granting the JNOV. It cites the case of Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991), which states the applicable law regarding the granting of a JNOV and the standard of review to be used when JNOV is granted:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. (Citations omitted). Id. at 832.
We conclude that the granting of JNOV was correct because there was no evidence that plaintiff authorized Blake Williams to endorse the settlement checks for her. Plaintiff states that the facts established at trial mandate that Liberty Bank be held liable to her for conversion under La. R.S. 10:3-206(c) or, alternatively, under La. R.S. 10:3-420(a).[3]
La. R.S. 10:3-206(c) states in pertinent part:
If an instrument bears an indorsement (i) described in R.S. 10:4-201(b), or (ii) in blank or to a particular bank using the words "for deposit," "for collection," or other words indicating a purpose of having the instrument collected by a bank for the indorser or for a particular account, the following rules apply:
* * * * *
(2) A depositary bank that purchases the instrument or takes it for collection when so indorsed converts the instrument unless the amount paid by the bank with respect to the instrument is received by the indorser or applied consistently with the indorsement.
(3) A payor bank that is also the depositary bank or that takes the instrument for immediate payment over the counter from a person other than a collecting bank converts the instrument unless the *279 proceeds of the instrument are received by the indorser or applied consistently with the indorsement.
La. R.S. 10:3-420 states in pertinent part:
An instrument is converted when
* * * * *
(iii) it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.
Liberty Bank argues that the evidence presented at trial established that Blake Williams had the authority of plaintiff to endorse the settlement checks and deposit these into his client trust account. It states that plaintiff testified that Blake Williams was her attorney and was authorized to act on her behalf. A reading of the cited portion of testimony reveals that plaintiff said that she gave Blake Williams permission to receive the settlement checks, but not to deposit them to his account. The testimony of Blake Williams and other defense witnesses established that Blake Williams was plaintiff's attorney and was authorized to act on her behalf and to receive the settlement checks. However, there is no testimony or other evidence to support Liberty Bank's claim that plaintiff gave Blake Williams the specific authority to endorse her name on the back of the settlement checks, which were made payable only to her. The record does not contain an attorney-client agreement between plaintiff and Blake Williams giving Blake Williams the authority to endorse checks for plaintiff (Blake Williams testified that no written attorney-client agreement existed.) The record also does not contain the power of attorney that Liberty Bank claims it relied upon in refusing Allstate's bank's request for reimbursement based on a forged endorsement.
In fact, the following excerpts from Blake Williams' testimony demonstrate that plaintiff did not authorize him to endorse her name on the checks:
Q. Did she authorize you to endorse her name on the check?
A. Did she give me permission herself?
Q. Yes.
A. No.
Later, in Blake Williams' testimony, the following exchange occurred:
Q. If you have the right to get that money and you have the right to endorse your client's name, which you did not have in this case, would you agree with that?
A. Not personally from her. She did not sign the Allstate check, no, she did not.
Q. She did say it's okay if you sign the Allstate check?
A. No.
Contrary to arguments of Liberty Bank, this case is not about the requirement of lawyers to place clients' settlement funds into their client trust accounts. The main issue in this case is whether Liberty Bank acted appropriately in depositing the funds in question to Blake Williams' client trust account, given the facts the checks were made payable only to a non-customer of the bank for large sums and were endorsed in the name of the payee only, followed by the words "For Deposit Only"[4] and nothing more.
We conclude that under the particular facts of this case, Liberty Bank should have inquired into the authenticity of the endorsements or into the depositor's authority *280 to endorse the checks on behalf of the payee before placing the funds into an account other than one belonging to the only named payee, who in this case was not a customer of the bank.[5] As stated above, Liberty Bank claims that it relied on a power of attorney allegedly executed by plaintiff and authorizing Blake Williams to endorse her name on the settlement checks. However, this document was not introduced into evidence.
In this case, we conclude that the facts and inferences point so strongly in favor of plaintiff that reasonable men could not reach any other conclusion than that plaintiff did not authorize Blake Williams to endorse her name on the settlement checks in question. Accordingly, Liberty Bank is liable to plaintiff for conversion of these two checks under R.S. 10:3-420. The trial judge correctly awarded the amounts of the two checks plus legal interest from the date of judicial demand.
With regard to Liberty Bank's argument that the trial judge erred in denying its motion for summary judgment, we find no error in that ruling. Liberty Bank argued in its motion that plaintiff is not entitled to recover against the bank because she was not the "true owner" of the Allstate checks. The former R.S. 10:3-419(1) stated in pertinent part that "when a drawee to whom an instrument is delivered for acceptance refuses to return it on demand; or when a person to whom an instrument is delivered for payment refuses on demand either to pay or to return it; or when a person pays an instrument on a forged indorsement, he is liable to the true owner." When the negotiable instruments statutes were revised in 1994, the former R.S. 10:3-419 was modified and enacted as R.S.10:3-420. The "true owner" language was not retained. R.S. 10:3-420(b) states in pertinent part: "An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or co-payee or (iii) by the drawer." In this case, the plaintiff did not receive the checks personally, but she constructively received them when they were delivered to her attorney. Therefore, plaintiff has a right to bring a cause of action against Liberty Bank under R.S. 10:3-420. Liberty Bank's motion for summary judgment was correctly denied.
For the reasons stated above, the trial court judgment appealed from is affirmed.[6]
AFFIRMED.
NOTES
[1] Plaintiff's married name was Mayfield; after her divorce, she resumed the use of her maiden name, Williams.
[2] A directed verdict was granted in favor of the President of Liberty Bank, Alden McDonald.
[3] The cause of action in this case arose after the enactment of these statutes in 1994. Our research reveals no factually analogous cases, which applied these 1994 statutes.
[4] If the words "For Deposit Only" appeared above the name "Brenda Williams," the bank would have had no other options than to give the named payee the proceeds of the check or deposit the funds into an account in the payee's name. However, because the words "For Deposit Only" appear below the name "Brenda Williams," we must determine whether the bank's actions were reasonable at the time the checks were presented for deposit into Blake Williams' client trust account.
[5] This situation differs from that in which the check is made out to co-payees and one co-payee forges the other co-payee's signature and deposits the check into the former's account.
[6] Because of our holding that the JNOV was properly granted, we need not address the trial judge's conditional grant of the motion for new trial.